United States Court of Appeals,

Fifth Circuit.

No. 93-2881.

Denise CHAVEZ, Plaintiff-Appellee,

v.

ARTE PUBLICO PRESS, et al., Defendants-Appellants.

Aug. 1, 1995.

Appeal from the United States District Court for the Southern District of Texas.

Before WISDOM, JONES and EMILIO M. GARZA, Circuit Judges.

EDITH H. JONES, Circuit Judge:

The University of Houston and one of its employees appeal the denial of their motions to dismiss an action brought under the Copyright and Lanham Acts. Appellants principally contend that the Acts are unconstitutional under the Eleventh Amendment because they purport to override state immunity and authorize suits in federal court against the state for violation of the Acts. This would appear to be a compelling defense, were it not for the vicissitudes of Supreme Court interpretation of the Amendment. As the Court's decisions now stand, the University's claim of sovereign immunity must fail, although its employee Kanellos prevails on qualified immunity.

BACKGROUND[1]

Denise Chavez, the plaintiff/appellee, is a "nationally

---

[1]Because this is an appeal from the denial of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state claim on which relief may be granted, we take as true the facts alleged in the Complaint.

1

renowned playwright and dramatist ... with a unique and valuable reputation as a commentator on cultural issues regarding women and, in particular, Hispanic women." Chavez has resided in New Mexico at all times relevant to this lawsuit.

Arte Publico Press, the defendant/appellant, is a component part of the University of Houston and legally indistinguishable from the University. The University is owned and operated by the State of Texas. Nicolas Kanellos, also a defendant/appellant, is a University employee who at all times relevant acted on its behalf.

In July 1984, Chavez and the University entered into a contract for publication of her books. A year later, the University agreed to do a first printing of *The Last of the Menu Girls,* a collection of Chavez's short stories. The book was published in 1986, and the copyright was registered in Chavez's name as author and owner. Twice in later years, the parties agreed on additional publishing contracts for *The Last of the Menu Girls,* each of which provided for a specified number of copies to be printed. Kanellos signed the contracts on behalf of the University.

In late 1991 and early 1992, Chavez, dissatisfied that the University had failed to correct errors in the earlier printings, refused to permit the University to print any more copies than agreed to in the 1991 contract. On or about October 2, 1992, however, the University asserted to Chavez that the 1991 contract did not limit the number of copies it could print and declared its

intention to print 5,000 more copies of the book.[2]

During this time period, the University also published an anthology of plays entitled *Shattering the Myth.* Chavez was identified in a University catalog as the selector of the plays. Chavez does not dispute this statement, but she objects that her identification as selector is a misrepresentation of sponsorship in violation of her right to publicity.

Chavez filed this action in 1993 in federal court. Her complaint alleges that the University and Kanellos, in both his official and individual capacities, infringed her copyright in her book, violated the Lanham Act in naming Chavez as the selector of the plays without her authority, and violated her state law right to publicity. Chavez seeks a declaratory judgment securing her rights under the contract, as well as damages, attorneys' fees, and an injunction against the University. Chavez invokes federal question and supplemental jurisdiction, but not diversity jurisdiction.

The University moved to dismiss on behalf of itself and Kanellos for failure to state a claim, resting *inter alia,* on Eleventh Amendment sovereign immunity. Kanellos also asserted his qualified immunity. The district court denied the motions, allowing the lawsuit to proceed. The University and Kanellos filed a timely interlocutory appeal on these issues. *Puerto Rico*

---

[2]The 1991 contract provides that the University shall have the exclusive right publish the book for a term of at least five years and that only the University may terminate the contract during that term. The addendum to the contract specifies that the number of copies to be published is 2,000 trade paperbacks.

*Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* --- U.S. ----, ----, 113 S.Ct. 684, 689, 121 L.Ed.2d 605 (1993).

DISCUSSION

A State's immunity from suit in federal court has a turbulent past, an enigmatic present, and an uncertain future. Our commission is to ascertain the current state of the law, guided by the historical evolution of sovereign immunity. The future of such immunity will ultimately be resolved by the Supreme Court, perhaps in a case pending this term. *See Seminole Tribe of Florida v. State of Florida,* 11 F.3d 1016 (11th Cir.1994), *cert. granted,* --- U.S. ----, 115 S.Ct. 932, 130 L.Ed.2d 878 (1995).

The highlights of sovereign immunity jurisprudence provide the necessary context for this discussion. The Constitution did not originally confer explicit immunity on the States against suits in federal court. Article III, section 2 extends the federal judicial power to controversies "between a State and Citizens of another State." In 1793, the Supreme Court exercised this grant of power and assumed original jurisdiction over a suit brought by a citizen of South Carolina against the State of Georgia. *Chisholm v. Georgia,* 2 Dall., 419, 1 L.Ed. 440 (1793). This decision "created such a shock of surprise that the Eleventh Amendment was at once proposed and adopted." *Monaco v. Mississippi,* 292 U.S. 313, 325, 54 S.Ct. 745, 749, 78 L.Ed. 1282 (1934).

The Eleventh Amendment provides:

> "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign

4

State."

That the Amendment's language overruled *Chisholm* was never disputed; whether the Amendment also affirmed the existence of immunity beyond the text, as later recognized in *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), has been the subject of intense debate.

In *Hans,* the Supreme Court held that the scope of sovereign immunity was not limited by the text of the Eleventh Amendment. Rather, the Amendment embodied the broader and more fundamental constitutional concept of state immunity from suit in federal court even against suits brought by its own citizens. A review of the constitutional debates concerning the scope of Article III persuaded the Court that federal jurisdiction over suits against unconsenting states "was not contemplated by the Constitution when establishing the judicial power of the United States." *Id.* at 15, 10 S.Ct. at 507.[3] Although repeatedly called into question by some

_____

[3]Thirty years later, the Court succinctly summarized its Eleventh Amendment jurisprudence after *Hans:*

> "That a State may not be sued without its consent is a fundamental rule of jurisprudence having so important a bearing upon the construction of the Constitution of the United States that it has become established by repeated decisions of this court that the entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a State without consent given: not one brought by citizens of another State, or by citizens of a foreign State, because of the Eleventh Amendment; and not even one brought by its own citizens, because of the fundamental rule of which the Amendment is but an exemplification."

*Ex Parte State of New York,* 256 U.S. 490, 497, 41 S.Ct. 588, 589, 65 L.Ed. 1057 (1921).

5

of the Justices, *Hans* and its progeny remain the law.  However, a State's general immunity from suit in federal court marks only the beginning of the inquiry.

A State is free to waive its immunity and consent explicitly to suit in federal court.  *See e.g., Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984);  *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985).  Not only may the state expressly waive its immunity, but according to some opinions from the Supreme Court, waiver may occur in two other instances relevant to this case.  The first theory of non-express waiver has been designated as the "plan of the [constitutional] convention" waiver; the second may be called "implied" or "*Parden* " waiver.[4]

The "plan of the convention" theory of state waiver of sovereign immunity was first highlighted in *Monaco v. Mississippi,* 292 U.S. 313, 54 S.Ct. 745, 78 L.Ed. 1282 (1934).  The Court explained that "States of the Union, still possessing attributes of sovereignty, shall be immune from suits, without their consent, save where there has been a "surrender of this immunity in the plan of the convention.'  The Federalist No. 81." *Id.* at 322-23, 54 S.Ct. at 748.[5]  According to the plan of the convention theory, by

---

[4]It has been held that in ratifying the Fourteenth Amendment, states waived immunity from suits authorized by Congress under section five of the Fourteenth Amendment. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976).  Our resolution of this case does not warrant analysis under the Fourteenth Amendment.

[5]In *Monaco,* the Court ultimately held that because there existed "no ground upon which it can be said that any waiver or

ratifying the Constitution, States necessarily surrendered certain of their powers to the federal government. Implicit in this surrender was a consent to suit in federal court in certain cases. The Supreme Court has found such a waiver in two contexts: suits by Sister States, *South Dakota v. North Carolina,* 192 U.S. 286, 318, 24 S.Ct. 269, 275, 48 L.Ed. 448 (1904), and suits by the United States, *United States v. Texas,* 143 U.S. 621, 12 S.Ct. 488, 36 L.Ed. 285 (1892). Whether the States waived immunity from suits by *private parties* by ratifying the Constitution is not so clear. As will be discussed, the Supreme Court was confronted with this very question in *Pennsylvania v. Union Gas,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989).

The second form of non-express waiver has been deemed to occur when a State participates for profit in a particular market or industry, and Congress, acting pursuant to the powers conferred upon it in Article I of the Constitution, has explicitly conditioned that participation on a State's waiver of immunity from suit. Thus, in *Parden v. Terminal Ry. of Ala. State Docks Dept.,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), "Congress conditioned the right to operate a railroad in interstate commerce upon amenability to suit in federal court as provided by the [Federal Employers' Liability Act] ..." *Id.* at 192, 84 S.Ct. at 1213. *See also Employees of Dept. of Public Health & Welf. v.*

consent by a State of the Union has run in favor of a foreign State," Mississippi had not waived its immunity from suit by the foreign State of Monaco. *Monaco,* 292 U.S. at 330, 54 S.Ct. at 751.

7

*Missouri,* 411 U.S. 279, 285, 93 S.Ct. 1614, 1618, 36 L.Ed.2d 251 (1973) (in enacting the Fair Labor Standards Act, Congress did not condition operation of a not-for-profit State hospital on waiver of State immunity); *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 247, 105 S.Ct. 3142, 3149-50, 87 L.Ed.2d 171 (1985) ("The Act ... falls far short of manifesting a clear intent to condition participation in the programs funded under the Act on a State's consent to waive its constitutional immunity.").

The State of Texas contends that neither theory of non-express waiver of sovereign immunity is viable against it in this case. Although Congress amended both the Copyright and Lanham Acts specifically to abrogate states' immunity from suit in federal court,[6] Texas asserts that these enactments violate recent Supreme

---

[6]The Copyright Act provides in pertinent part:

> In general, any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his official capacity, shall not be immune, under the Eleventh Amendment of the Constitution or under any doctrine of sovereign immunity, from suit in Federal Court by any person ... for a violation of any of the exclusive rights of the copyright owner provided by ... this Title.

17 U.S.C. § 511(a).

The Lanham Act provides in pertinent part:

> Any State, any instrumentality of a State or any officer or employee of a State or instrumentality of a State acting in his official capacity, shall not be immune, under the Eleventh Amendment of the Constitution or under any doctrine of sovereign immunity, from suit in Federal Court by any person ... for any violation under this chapter."

15 U.S.C. § 1122.

Court Eleventh Amendment jurisprudence and are ineffective. First, in *Blatchford v. Native Village of Noatak,* 501 U.S. 775, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991), and earlier cases, the Court allegedly closed the door on the "plan of the convention" theory of non-express waiver. Second, the State relies upon *Welch v. Texas Dept. of Highways & Public Transportations,* 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987), which, it contends, overruled *Parden v. Terminal Ry. of Alabama Docks Dept.,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964). In overruling *Parden,* the Court rejected the theory that Congress may overcome a state's immunity from suit in federal court by legislating pursuant to Article I.

While it appears that the state's first argument is correct, and the plan of the convention theory has never been accepted by more than four justices in any case, we nevertheless conclude that Texas's interpretation of *Parden* is in error under current caselaw.

To explain these conclusions it is necessary to return to *Pennsylvania v. Union Gas, supra,* where the issue presented was whether Congress had the intent and power to abrogate state immunity from private suit in federal court for violation of a federal environmental statute. A five-member majority of the Court held that the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), as amended by the Superfund and Reauthorization Act of 1986 (SARA), unmistakably conveyed Congress's intent to render States liable in federal court for

9

cleanup costs recoverable under CERCLA.[7] *Union Gas,* 491 U.S. at 8, 109 S.Ct. at 2278. On the issue of congressional authority to compel a waiver, however, Justice Brennan mustered only a plurality for his oft-stated view[8] that the states waived their immunity in the "plan of the convention." Applying their plan of the convention theory, Brennan's plurality held that Congress, acting pursuant to the Commerce Clause contained in Article I, section 8, was empowered to abrogate[9] Pennsylvania's sovereign immunity and authorize a private suit against the State in federal court. Four other justices vehemently dissented against the plan of the convention theory of waiver. *Id.* at 30-45, 109 S.Ct. at 2297-2304 (Scalia, J., concurring in part and dissenting in part).

Justice White cast the tie-breaking vote favoring abrogation of state sovereign immunity, although he also wrote on behalf of

---

[7]Justices Marshall, Blackmun, Stevens, and Scalia joined this portion of Justice Brennan's opinion.

[8]*See Employees of Dept. of Public Health & Welf. v. Missouri,* 411 U.S. 279, 317-18, 93 S.Ct. 1614, 1634, 36 L.Ed.2d 251 (1973) (Brennan, J., dissenting); *Edelman v. Jordan,* 415 U.S. 651, 687, 94 S.Ct. 1347, 1368, 39 L.Ed.2d 662 (1974) (Brennan, J., dissenting); *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 279-80, 105 S.Ct. 3142, 3166, 87 L.Ed.2d 171 (1985) (Brennan, J., dissenting); *Welch v. Texas Dept. of Highways and Public Trans.,* 483 U.S. 468, 504-09, 107 S.Ct. 2941, 2962-65, 97 L.Ed.2d 389 (1987) (Brennan, J., dissenting).

[9]The plurality's term "abrogate" appears to be a misnomer. If the States waived their immunity in the plan of the convention, there would be no immunity to abrogate. *See, Employees of Dept. of Public Health & Welf. v. Missouri,* 411 U.S. 279, 282 n. 1, 93 S.Ct. 1614, 1616 n. 1, 36 L.Ed.2d 251 (1973). If, on the other hand, the States did not waive their immunity, Congress would have no power to abrogate it. *See Puerto Rico,* --- U.S. ----, ---- - ----, 113 S.Ct. 684, 687-88. But to be consistent with the Justices' terminology, this opinion will also use "abrogate."

three other justices to dissent from the majority holding that CERCLA, as amended by SARA, was unmistakably clear in its intent to abrogate State immunity from suit in federal court. In a single terse paragraph, Justice White concurred individually in the Brennan plurality's conclusion that Congress has the power to abrogate sovereign immunity under its Article I powers, but he repudiated[10] the plurality's reasoning and reaffirmed his allegiance to *Hans*. *Id.* at 56-57, 109 S.Ct. at 2295-96 (White, J., concurring in part and dissenting in part).[11]

Justice White's concurrence must be taken on its face to disavow the plan of the convention theory of waiver. This

---

[10]Earlier in his concurring opinion, Justice White also voiced his disagreement with the reasoning of the plurality. *Id.* at 45, 109 S.Ct. at 2289 (White, J., concurring in part and dissenting in part).

[11]Justice White's conclusion on this issue in *Union Gas,* stated in full, is as follows:

> My view on the statutory issue has not prevailed, however, a majority of the Court has ruled that the statute, as amended, plainly intended to abrogate the immunity of the States from suit in the federal courts. I accept that judgment. This brings me to the question whether Congress has the constitutional power to abrogate the States' immunity.[FN8] In that respect, I agree with the conclusion reached by Justice Brennan in Part III of his opinion, that Congress has the authority Under Article I to abrogate the Eleventh Amendment immunity of the States, although I do not agree with much of his reasoning.
>
> [FN8] As a preliminary matter, I reiterate my view that for the reasons stated by the plurality in *Welch v. Texas Dept. of Highways, supra,* at 478-88, 107 S.Ct., at 2944-54, *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), should not be overruled.

> *Union Gas,* 491 U.S. at 57, 109 S.Ct. at 2296 & n. 8 (White, J., concurring in part and dissenting in part).

11

interpretation is consistent with his position in Eleventh Amendment cases decided before and after *Union Gas,* as Justice White has repeatedly parted company from Justice Brennan's attempts to engraft a plan of the convention theory of waiver into the Constitution. *See, e.g., Parden,* 377 U.S. at 198-99, 84 S.Ct. at 1216 (White, J., dissenting from Justice Brennan's theory that the states surrendered a portion of their sovereignty when they granted Congress the power to regulate commerce); *Employees of Dept. of Public Health & Welfare v. Missouri,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Port Authority Trans-Hudson Corp. v. Feeney,* 495 U.S. 299, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990).

The plan of the convention theory thus received only four votes of approbation in *Union Gas* and failed to become the constitutional law of the land. Despite his repeated efforts to secure a fifth vote in other cases, Justice Brennan, concurring in *Feeney, supra,* essentially conceded that the plan of the convention theory of waiver had never succeeded in capturing the Court's majority. *Feeney,* 495 U.S. at 310-11, 110 S.Ct. at 1875-76. And if further proof be needed, the Court's opinion in *Blatchford,* decided after *Union Gas* and concurred in by Justice White, pointedly observed that in only *two* classes of cases had the Court recognized that states waived immunity from suit in the plan of the convention—suits by sister states and suits by the United States. *Blatchford,* 501 U.S. at 780, 111 S.Ct. at 2582. No mention was made of waiver or abrogation of immunity in the face of

12

congressional action pursuant to Article I.

On this basis, we therefore agree with the state of Texas that Chavez may not defend the express abrogation of state sovereign immunity in the Copyright and Lanham Acts by reference to a plan of the convention theory of waiver.[12]

In uneasy juxtaposition, however, with his (and the Court's) disavowal of the plan of the convention theory of waiver stands Justice White's conviction that Congress may under some circumstances require state waiver of immunity in federal court as the price for conducting business regulated by Congress. He first articulated this position, which includes a requirement that Congress must expressly abrogate state sovereign immunity, in *Parden, supra:*

> Only when Congress has clearly considered the problem and expressly declared that any State which undertakes given regulable conduct will be deemed thereby to have waived its immunity should courts disallow the invocation of this defense.

*Parden,* 377 U.S. at 198-99, 84 S.Ct. at 1216 (White, J., dissenting).

He later joined in an opinion that limited the reach of *Parden* as follows:

---

[12]Chavez urges this court to mechanically apply the holding of *Peel v. Florida,* 600 F.2d 1070 (5th Cir.1979), in which we found a waiver in the plan of the convention for legislation passed pursuant to Congress' Article I war powers. *Id.* at 1080. However, since *Peel* was decided, the intervening Supreme Court decisions cited herein have rejected this theory of waiver. *Accord Seminole Tribe of Florida v. Florida,* 11 F.3d 1016 (11th Cir.1994), *cert. granted,* --- U.S. ----, 115 S.Ct. 932, 130 L.Ed.2d 878 (1995) (Judge Tjoflat, the author of both *Peel* and *Seminole Tribe,* does not follow *Peel* presumably because of the intervening Supreme Court decisions).

13

> The *Parden* case in final analysis turned on the question of waiver, a majority of the Court holding that it was a federal question since any consent of the State to suit did not arise from an act "wholly within its own sphere of authority" but in the area of commerce, which is subject to pervasive federal regulation.

*Employees of Dept. of Public Health and Welfare v. Missouri,* 411 U.S. 279, 284, 93 S.Ct. 1614, 1617, 36 L.Ed.2d 251 (1973). The Court there also noted that *Parden* involved a railroad business run by the State of Alabama for profit "in the area where private persons and corporations normally ran the enterprise." 411 U.S. 284, 93 S.Ct. at 1617.

Finally, Justice White concurred in an opinion for a five-member majority that overruled *Parden* "to the extent that [it] is inconsistent with the requirement that an abrogation of Eleventh Amendment immunity by Congress must be expressed in unmistakably clear language." *Welch v. Texas Dept. of Highways & Public Transp.,* 483 U.S. 468, 477, 107 S.Ct. 2941, 2948, 97 L.Ed.2d 389 (1987). But *Welch* significantly declined "to consider the validity of the additional holding in *Parden,* that Congress has the power to abrogate the State's Eleventh Amendment immunity under the Commerce Clause to the extent that the States are engaged in interstate commerce." *Id.* at 477 n. 8, 107 S.Ct. at 2948 n. 8.

From Justice White's writing and concurrences in these earlier cases, we infer the meaning of his vote in *Union Gas* in favor of congressional abrogation of state immunity. The underlying suit in *Union Gas* alleged that Pennsylvania caused or contributed to the toxic release when it was excavating a creek for purposes of flood control. *Union Gas,* 491 U.S. at 5, 109 S.Ct. at 2277. Justice

14

White evidently decided that if the majority's interpretation of the environmental statutes prevailed, that is, if Congress expressly determined to render states suable in federal court for cleanup costs, Congress had the power to do so under the Commerce Clause because, as in *Parden,* the states had voluntarily engaged in such regulated activities.

In the first section of his concurrence, Justice White highlights the portion of CERCLA, as amended by SARA, that exempts from liability costs incident to involuntary and emergency ownership by the State, except when the State has "caused or contributed" to the toxic release. *Id.* at 49-51 & n. 3, 109 S.Ct. at 2292-93 & n. 3 (White, J., concurring in part and dissenting in part). That Justice White determined that this affirmative conduct operated as an implied waiver of State immunity is suggested in a footnote. White posits:

> But under § 9601(20)(D), state and local governments are liable only if they have "*caused or contributed* " to a release of toxic materials. If § 9601(20)(D) is the source of the Eleventh Amendment *waiver,* and if, as the Court contends, its provisions are meant to address all state and local governments that own or operate toxic sites, then perhaps Congress *abrogated* the Eleventh Amendment only far enough to make States liable under this less stringent rule—whether they are voluntary or involuntary owners of a site.

*Id.* at 53 n. 5, 109 S.Ct. 2292 n. 5. (emphasis added).

Justice White later adds, "Congress may have reasoned that while state and local governments that are involuntary owners should be exempted from liability under CERCLA, *those that actually cause* subsequent discharges should be liable under the statute ..." *Id.* at 54 n. 6, 109 S.Ct. at 2294 n. 6 (White, J., concurring in

15

part and dissenting in part) (emphasis added).  Therefore, Justice White, believing that for every Congressional abrogation under the Commerce Clause there must be an accompanying State waiver, apparently found an implicit waiver, similar to that in *Parden,* inherent in Pennsylvania's alleged conduct which caused or contributed to the toxic release.[13]  Justice White's view, as the fifth vote for abrogation of sovereign immunity in *Union Gas,* must be taken as that of the Court.  *See, e.g., Schlup v. Delo,* --- U.S. ----, ----, 115 S.Ct. 851, 877, 130 L.Ed.2d 808 (1995).

In summary, applying the Supreme Court's current Eleventh

---

[13]Additional circumstantial supporting evidence that this was Justice White's theory of the case is found in Justice Scalia's dissent.

After discussing why he and three of his colleagues rejected the plurality's application of the plan of the convention waiver to the Article I, section 8 context, Justice Scalia moves to the other potentially applicable type of waiver recognized by the Court, that of implicit waiver under *Parden.*  As framed by Justice Scalia, the issue was whether, by its actions, "Pennsylvania voluntarily assumed the state liability for private suit" contained in CERCLA.  *Id.* at 42, 109 S.Ct. at 2303 (Scalia, J., concurring in part and dissenting in part).  Recognizing that the implicit waiver theory in *Parden* had not yet been overruled, Justice Scalia declared that the time to do so had arrived.  *Id.* at 43, 109 S.Ct. at 2303 (Scalia, J., concurring in part and dissenting in part).  He implicitly criticized Justice White's position:  "[T]o acknowledge that the Federal Government can make the waiver of state sovereign immunity a condition to the State's action in a field that Congress has authority to regulate is substantially the same as acknowledging that the Federal Government can eliminate state sovereign immunity in the exercise of its Article I powers—that is, to adopt the very principle I have just rejected."  *Id.* at 44, 109 S.Ct. at 2304 (Scalia, J., concurring in part and dissenting in part).  Justice Scalia would have had little reason to address *Parden* waiver had he not thought it relevant to Justice White's position.

16

Amendment jurisprudence, we must conclude that although the implied waiver found in *Parden* has been narrowed considerably and called into question, it has never been overruled and, indeed, seems to have motivated Justice White's crucial fifth vote for concurrence in *Union Gas.* *Blatchford* did not touch on the *Parden* theory of waiver or implied consent. Until the Supreme Court determines otherwise, we must conclude that Congress is authorized expressly to compel states to waive sovereign immunity from private suits in federal court under the narrow circumstances found in *Parden, i.e.,* when the states opt to conduct business for profit in areas where Congress conditions participation upon waiver of immunity.

Applying the foregoing discussion of states' immunity to this case is not difficult. Both the Copyright Act and the Lanham Act represent valid exercises of Congressional power under the Copyright Clause, Article I, section 8, clause 8 of the Constitution. Further, both of these statutes were recently amended to express in clear and unmistakable language Congress's intent to abrogate State immunity from suit, as required by *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985). Although we are aware of no case that specifically holds that laws passed pursuant to the Copyright Clause can abrogate State immunity, there is no principled reason to distinguish between this and other Article I, section 8 powers entrusted to Congress. *Accord Union Gas,* 491 U.S. at 42, 109 S.Ct. at 2303 (Scalia, J., concurring in part and dissenting in part). Since Texas has not expressly waived its

17

immunity by statute or otherwise, the remaining question is whether Texas impliedly consented to suit by knowingly participating in the publishing business, in which Congress has expressly conditioned states' activity on a waiver of sovereign immunity.

Language intended to abrogate State immunity was added to the Copyright Act effective November 15, 1990, *see* note 6, *supra,* the amendment responded to court decisions holding that the absence of clear and unmistakable language precluded waiver of state immunity under the previously-discussed Supreme Court cases. *See, e.g., BV Engineering v. Univ. of Cal., Los Angeles,* 858 F.2d 1394, 1396 (9th Cir.1988). Chavez and the University entered into a contract authorizing publication of *The Last of the Menu Girls* in early 1991. According to the Complaint, the University notified Chavez in October, 1992 of its intent to publish more copies of the book than authorized in the contract. Chavez alleges that the University has published and distributed the additional copies and in so doing has infringed upon her copyright. The University's conduct in alleged violation of the agreement occurred after the 1990 amendment of the Copyright Act. Therefore, the University had notice that its continued participation in the publishing business for profit was conditioned by Congress upon a waiver of its immunity from suit in federal court for violations of the Copyright Act. What is left of *Parden* governs this suit. Accordingly, Chavez may proceed with her lawsuit against the University and Kanellos in his official capacity for alleged violations of the Copyright Act.

18

Unmistakably clear language intended to abrogate State immunity was also added to the Lanham Act effective October 27, 1992. *See* note 6, *supra.* The Complaint alleges that the University violated the Lanham Act when it published, without Chavez's consent, a catalog advertisement of a book entitled *Shattering the Myth,* which the catalog described as a collection of plays selected by Chavez. According to the Complaint, this catalog was published in or about September 1992—one month *before* the abrogation language was added to the Act. To the extent that the Complaint seeks redress for violations that allegedly occurred *before* the amendment was enacted, the State is immune. The State is not immune, however, from any action or relief sought by Chavez concerning conduct that occurred *after* the effective date of the amendment, when the University is deemed to have had notice of its contents.

Chavez conceded in oral argument that the abrogation of immunity in the Copyright Act and Lanham Act does not extend to state law causes of action. Her state law "right to publicity" cause of action is thus barred against the University and Kanellos in his official capacity.

We now turn to Kanellos's contention that he is qualifiedly immune from suit. Qualified immunity shields from liability government officials performing discretionary functions "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523

19

(1987); *see also Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). This immunity is not merely immunity from liability, but is also immunity from suit, *Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991), and it is effectively lost if a case is erroneously permitted to go to trial. *Sorey v. Kellett,* 849 F.2d 960, 961 (5th Cir.1988).

The dispositive question is "whether an objectively reasonable official would understand that the alleged improper actions were unlawful." *Del A. v. Edwards,* 855 F.2d 1148, 1151 (5th Cir.1988).

The unlawful act Kanellos is alleged to have committed was authorizing the printing of copies of Chavez's book in violation of the Copyright Act. However, paragraph 14 of plaintiff's Complaint concedes that the contractual provision relating to the duration of the publishing license is ambiguous. The contract itself, appended to the plaintiff's Complaint, confirms this ambiguity. Because the licensing contract was reasonably susceptible to two interpretations, one of which renders Kanellos's alleged act perfectly legal, he is entitled to qualified immunity. *See Anderson,* 483 U.S. at 641, 107 S.Ct. at 3040 (officer entitled to qualified immunity if reasonable officer could have believed actions were lawful in light of information possessed).

Neither the Complaint nor plaintiff's appellate brief clearly states that Chavez is asserting causes of action against Kanellos in his individual capacity under the Lanham Act and for violating

20

state law privacy rights.  Therefore, because plaintiff has failed to allege facts which would enable her to recover against Kanellos in his individual capacity, he is entitled to qualified immunity. *See Elliott v. Perez,* 751 F.2d 1472, 1473 (5th Cir.1985).

CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of sovereign immunity for actions of the University undertaken after the amendments to the Copyright and Lanham Acts. We REVERSE the finding that the University may be sued for invasion of state law privacy rights and REMAND with instructions to dismiss this cause of action.  We also REVERSE the denial of qualified immunity for Kanellos and REMAND with instructions to dismiss all causes of action against him in his individual capacity.

AFFIRMED in part, REVERSED and REMANDED in part.