Abel **RODRIGUEZ**, Plaintiff,

v.

**TEXAS COMMISSION ON THE ARTS**, Defendant.

No. CIV. A. 5:97–CV–331–C.

United States District Court,
N.D. Texas,
Lubbock Division.

Jan. 29, 1998.

David Eldon Moody, Lubbock, TX, for Plaintiff.

Lisa M. Nieman, Litigation Division, Atty. Gen., Austin, TX, for Defendant.

## MEMORANDUM OPINION AND ORDER

CUMMINGS, District Judge.

On this day the Court considered Defendant Texas Commission on the Arts' ("the Commission") Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, filed November 17, 1997. On December 5, 1997, Plaintiff Abel Rodriguez ("Rodriguez") filed a response to the Commission's motion. After considering all relevant arguments and evidence, the Court **GRANTS** the Commission's Motion to Dismiss.

## I.

## BACKGROUND

This is a copyright case. Rodriguez is an artist who designed a license plate for possible use by the Texas Department of Transportation. Rodriguez designed the license plate using his own creative abilities, without any contractual arrangement with the State of Texas. On October 24, 1994, Rodriguez wrote to Mr. Jerry Dike of the Texas Department of Transportation. In that letter, Rodriguez explained that he had redesigned and modernized a license plate design that he would like the State of Texas to consider. Rodriguez enclosed the first draft of his proposed design of the Texas license plate.

On November 14, 1994, Rodriguez again corresponded with Mr. Dike and enclosed a revised design that contained a copyright notice. On December 12, 1994, Rodriguez' license plate design was copyrighted. The Texas Legislature then enacted § 502.272 of the Texas Transportation Code which became effective September 1, 1995. V.T.C.A., Transportation Code § 502.272 (Vernon 1998). This law created the new "Texas Commission on the Arts" license plate, which incorporates the Texas flag as the background for the plate. This design by the Commission bears a striking resemblance to the proposed license plate design which Rodriguez submitted to the Texas Department of Transportation. After seeing the new Texas license plates, Rodriguez sued the Commission for copyright infringement.

## II.

## RULE 12(b)(1) STANDARD

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Lack of subject matter jurisdiction may be found in any one of three instances, through: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981); *see also Barrera–Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir.1996).

There are two ways to use a Rule 12(b)(1) motion to attack a complaint or cross-claim: a "facial attack" and a "factual attack." A facial attack requires the court merely to decide if the plaintiff has correctly alleged a basis for subject matter jurisdiction. *1995 Venture I, Inc. v. Orange County, Tex.,* 947 F.Supp. 271, 276 n. 7 (E.D.Tex. 1996). A facial attack is valid if from the face of the pleadings, the court can determine it lacks subject matter jurisdiction. For the purposes of the motion, the allegations in the complaint are taken as true.

*Saraw Partnership v. United States,* 67 F.3d 567, 569 (5th Cir.1995).

■ By contrast, if the defendant had challenged the facts that formed the basis for the plaintiff's claim of subject matter jurisdiction, the attack would be factual and the court would therefore treat the motion differently. A factual attack challenges the existence of subject matter jurisdiction by looking beyond the pleadings. In reviewing a factual attack the court may consider matters outside the pleadings, such as testimony and affidavits. *McDaniel v. United States,* 899 F.Supp. 305, 307 (E.D.Tex.1995), *aff'd,* 102 F.3d 551 (5th Cir.1996).

■ Factual and facial attacks under Rule 12(b)(1) may occur at any stage of the proceedings. The plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir.1980). A party may claim that subject matter jurisdiction is lacking by virtue of the plaintiff's inability to prove the elements of the federal cause of action in question. To determine whether a federal question is involved requires the court to consider whether the complaint states a claim "arising under" federal law. *O'Quinn v. Manuel,* 773 F.2d 605, 607 (5th Cir.1985).

■ The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *McDaniel,* 899 F.Supp. at 307. When a Rule 12(b)(1) motion is filed with a Rule 12(b)(6) motion, the court should consider the jurisdictional attack before addressing the attack on the merits. *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir.1977) (per curiam). This requirement prevents a court without jurisdiction from dismissing a case with prejudice. The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination on the merits and does not prevent the plaintiff from pursuing a claim in a court that does have subject matter jurisdiction. *Id.*

## III.

## DISCUSSION

■ The Commission contends that the Eleventh Amendment to the United States Constitution bars Rodriguez' suit. The Eleventh Amendment provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI.

Although the plain language of the amendment only bars suits by citizens of one state suing another state, and does not bar a suit by a citizen against his own state, the Supreme Court has interpreted the Eleventh Amendment as providing both types of immunity. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The Supreme Court's interpretation of the Eleventh Amendment has two parts: "first, that each State is a sovereign entity in our federal system;" *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 1122, 134 L.Ed.2d 252 (1996); and second, that " '[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.' " *Id.* (citing *Hans,* 134 U.S. at 13, 10 S.Ct. at 506 (emphasis deleted), quoting THE FEDERALIST No. 81, at 487 (A.Hamilton) (Clinton Rossiter ed.1961)). It is undisputed that the State of Texas has not consented to this lawsuit. The Commission therefore argues that the Eleventh Amendment bars Rodriguez' claims against it, because the Commission is an agency or instrumentality of the State of Texas.

■ Rodriguez argues in reply that Congress, through a 1990 amendment to the Copyright Act of 1976, unambiguously abrogated the State of Texas' immunity from suit. 17 U.S.C. § 511(a); *Unix Sys. Lab., Inc. v. Berkeley Software Design, Inc.,* 832 F.Supp. 790, 799 (D.N.J.1993). To determine whether Congress has abrogated a State's sovereign immunity, the Court asks two questions: first, whether Congress has " 'unequivocally expresse[d] its intent to abrogate the immunity,' " and second, "whether Congress has acted 'pursuant to a valid exercise of power.' " *Seminole Tribe,* 116 S.Ct. at 1123

(quoting Green v. Mansour, 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985)).

■ Congress' intent to abrogate the States' immunity from suit must be obvious from "a clear legislative statement." *Blatchford v. Native Village of Noatak,* 501 U.S. 775, 786, 111 S.Ct. 2578, 2584, 115 L.Ed.2d 686 (1991). As the Supreme Court has stated, "Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute." *Dellmuth v. Muth,* 491 U.S. 223, 228, 109 S.Ct. 2397, 2400, 105 L.Ed.2d 181 (1989) (quoting Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985) (internal quotations omitted)). The language of the 1990 amendments to the Copyright Act evinces an unmistakable intent to abrogate State sovereign immunity. The statute reads:

> Any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State ... shall not be immune, under the Eleventh Amendment of the Constitution of the United States or under any other doctrine of sovereign immunity, from suit in Federal court by any person, ... for a violation of any of the exclusive rights of a copyright owner ....

17 U.S.C. § 511(a). The plain language of the statute makes it indubitable that Congress intended through this Act to abrogate the States' sovereign immunity from suit in copyright matters.

■ Having concluded that Congress clearly intended to abrogate the States' sovereign immunity through the Copyright Act amendment, the Court now considers whether Congress passed the Act "pursuant to a valid exercise of power." *Mansour,* 474 U.S. at 68, 106 S.Ct. at 425–26. The "inquiry into whether Congress has the power to abrogate unilaterally the States' immunity from suit is narrowly focused on one question: Was the Act in question passed pursuant to a constitutional provision granting Congress the power to abrogate?" *Seminole Tribe,* 116 S.Ct. at 1125 (citing *Fitzpatrick v. Bitzer,* 427 U.S. 445, 452–56, 96 S.Ct. 2666, 2669–71, 49 L.Ed.2d 614 (1976)).

The Supreme Court has previously found authority to abrogate under only two provisions of the Constitution. In *Fitzpatrick,* the Court recognized that the Fourteenth Amendment, by expanding federal power at the expense of state autonomy, fundamentally altered the balance of state and federal power struck by the Constitution. *Fitzpatrick,* 427 U.S. at 455, 96 S.Ct. at 2671. The Supreme Court made the only other finding of abrogation in *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989). In that case, a plurality of the Court found that the Interstate Commerce Clause, Art. I, § 8, cl. 3, granted Congress the power to abrogate State sovereign immunity. The Court later noted, however, that Justice Brennan's opinion in *Union Gas* was of questionable precedential value because a majority of the Court disagreed with the rationale of the plurality. *Seminole Tribe,* 116 S.Ct. at 1128. In overruling *Union Gas,* Chief Justice Rehnquist noted that *Union Gas* was a "solitary departure from established law," and that the opinion "eviscerated" the Court's landmark holding in *Hans v. Louisiana. Id.* Understanding the Supreme Court's holding that the Fourteenth Amendment is the only means by which Congress can abrogate State sovereign immunity, the Court now applies the Supreme Court's precedent to the case *sub judice.*

A recent Fifth Circuit case which the Supreme Court vacated and remanded shows why the Eleventh Amendment bars Rodriguez' suit against the Commission. In *University of Houston v. Chavez,* 517 U.S. 1184, 116 S.Ct. 1667, 134 L.Ed.2d 772 (1996), the Court vacated and remanded the Fifth Circuit's ruling which *failed* to hold that the Eleventh Amendment bars an action against a State under the Copyright Act of 1976. In vacating the judgment, the Supreme Court remanded only with instructions that it be reviewed "for further consideration in light of *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)." *Chavez,* 116 S.Ct. at 1667, *vacating and remanding* Chavez v. Arte Publico Press, 59 F.3d 539 (5th Cir.1995).

Thus, *Seminole Tribe* is the controlling authority in this case. In that controversy, the Court held that Congress did not act pursuant to a valid exercise of power when it attempted to abrogate State sovereign immunity by passing a law pursuant to the Indian Commerce Clause, a clause of Article I of the Constitution. 116 S.Ct. at 1119. The Court reasoned that a clause of Article I which predates the Eleventh Amendment cannot be a proper basis for superseding the Eleventh Amendment, a later amendment to the same document. 116 S.Ct. at 1128. "As the dissent in *Union Gas* made clear, *Fitzpatrick* cannot be read to justify a 'limitation of the principle embodied in the Eleventh Amendment through appeal to *antecedent provisions* of the Constitution.'" *Seminole Tribe*, 116 S.Ct. at 1128 (quoting *Union Gas*, 491 U.S. at 42, 109 S.Ct. at 2303 (Scalia, J., dissenting)) (emphasis added).[1] The same reasoning is applicable in this case, as Chief Justice Rehnquist noted in the *Seminole Tribe* opinion:

> [I]t has not been widely thought that the federal antitrust, bankruptcy, or copyright statutes abrogated the States' sovereign immunity. This Court never has awarded relief against a State under any of those statutory schemes .... Although the copyright and bankruptcy laws have existed practically since our nation's inception, ... there is no established tradition in the

lower federal courts of allowing enforcement of those federal statutes against the States. Notably, both Court of Appeals decisions cited by Justice Stevens were issued last year and were based upon *Union Gas*. *See Chavez v. Arte Publico Press*, 59 F.3d 539 [(5th Cir.1995)] .... Indeed, while the Court of Appeals in *Chavez* allowed the suit against the State to go forward, it expressly recognized that its holding was unprecedented. *See Chavez*, 59 F.3d at 546 ("we are aware of no case that specifically holds that laws passed pursuant to the Copyright Clause can abrogate state immunity").

116 S.Ct. at 1131–32 n. 16.

■■■ Congress enacted the Copyright Act of 1976 pursuant to the Copyright Clause of the Constitution, a clause also found in Article I of that document. Because this is so, the Court lacks jurisdiction to hear this lawsuit, because the Copyright Act amendment did not abrogate Eleventh Amendment immunity pursuant to a valid exercise of power.

## IV.

## CONCLUSION

If the Eleventh Amendment means anything, it means that State sovereignty and federalism are real and dynamic constitutional principles, and not merely ephemeral

---

1. Justice Scalia cogently explained why Article I powers are ineffective to abrogate Eleventh Amendment sovereign immunity in his dissent in *Union Gas*:

> Finally, the plurality opinion errs in relying on *Fitzpatrick v. Bitzer, supra*, which upheld a money award against a State under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U.S.C. § 2000e *et seq*. The distinction, as we carefully explained in that opinion, is that the Civil Rights Act was enacted pursuant to § 5 of the Fourteenth Amendment. We held that "the Eleventh Amendment, and the principle of state sovereignty which it embodies, see *Hans v. Louisiana*, ... are necessarily limited" by the later Amendment, 427 U.S., at 456, whose substantive provisions were "by express terms directed to the States," *id.*, at 453, and "'were intended to be, what they really are, limitations of the power of the States and enlargements of the power of Congress,'" *id.*, at 454, quoting *Ex parte Virginia*, 100 U.S. 339, 345 (1879). Nothing in this rea-

> soning justifies limitation of the principle embodied in the Eleventh Amendment through appeal to antecedent provisions of the Constitution. The plurality asserts that it is no more impossible for provisions of the Constitution adopted *concurrently* with Article III to permit abrogation of state sovereign immunity than it is for provisions adopted *subsequently*. We do not dispute that is possible, but only that it happened. As suggested above, if the Article I commerce power enables abrogation of state sovereign immunity, so do all the other Article I powers. An interpretation of the original Constitution which permits Congress to eliminate sovereign immunity only if it wants to renders the doctrine a practical nullity and is therefore unreasonable. The Fourteenth Amendment, on the other hand, was avowedly directed against the power of the States, and permits abrogation of their sovereign immunity only for a limited purpose. *Union Gas*, 491 U.S. at 41–42, 109 S.Ct. at 2303–04 (Scalia, J., dissenting).

ideas. Therefore, for the reasons expressed by the Supreme Court of the United States in *Seminole Tribe,* the Court **GRANTS** the Commission's Motion to Dismiss for lack of subject matter jurisdiction.

SO ORDERED.

### *JUDGMENT*

For the reasons stated in the Court's order of even date,

IT IS ORDERED that the above-styled and -numbered cause is **DISMISSED** with prejudice.