Revised March 10, 2000

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

———————————————

**No. 93-2881**

———————————————

**DENISE CHAVEZ**

**Plaintiff-Appellee,**

**v.**

**ARTE PUBLICO PRESS, et al.,**

**Defendants-Appellants**

———————————————————————————————————

**Appeal from the United States District Court for the
Southern District of Texas**

———————————————————————————————————

February 18, 2000

Before KING, Chief Judge, JONES and EMILIO M. GARZA, Circuit Judges.

EDITH H. JONES, Circuit Judge:

This Copyright/Lanham Act case has once again been remanded, this time by this Court sitting en banc, for reconsideration in light of the Supreme Court's decisions in <u>Florida Prepaid Postsecondary Educ. Expense Bd. v. College Savings Bank</u>, ___ U.S. ___, 119 S.Ct. 2199 (1999) and <u>College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.</u>, ___ U.S. ___, 119 S.Ct. 2219 (1999). The issue is whether Congress properly exercised its authority to subject states to suit in federal court for violation

of those statutes.  See 15 U.S.C. §1122; 17 U.S.C. §§501, 511. Plaintiff Chavez asserts that the University of Houston infringed her copyright by continuing to publish her book without her consent and violated the Lanham Act by naming her, also without her permission, as the selector of plays in another book it published. The University of Houston contends that because it enjoys immunity from unconsented-to suit in federal court under the Eleventh Amendment, the case must be dismissed.  Once again, we agree with the University.[1]

Abrogation of a state's Eleventh Amendment immunity turns on an express statement of intent by Congress and a constitutionally valid exercise of power.  See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 55, 116 S.Ct. 1114, 1123, 134 L.Ed.2d 252 (1996).  Congress amended both the Lanham Act and the Copyright Act and explicitly required states to submit to suit in federal court for violation of their provisions;[2] thus, the express statement requirement is fulfilled.  The remaining question, to be considered in the light

---

[1]    A recent summary calendar decision of this court held, while this case was being briefed and considered on remand, that a state's sovereign immunity could not be abrogated by the enactment of the Copyright Remedy Clarification Act, a statute at issue here.  Rodriguez v. Texas Comm'n on the Arts, Case No. 98-10251 (5th Cir., Jan. 10, 2000).  We are bound by that decision, but in light of our post-remand briefing requests to the parties in this case, and their and the amici's voluminous responses, a complete response is appropriate to the issues presented.

[2]    See Trademark Remedy Clarification Act, Pub.L. No. 102-542, 106 Stat. 3567 (1992) (codified at 15 U.S.C. §§1122, 1125(a)); Copyright Remedy Clarification Act, Pub.L.No. 101-553, 104 Stat. 2749 (1990) (codified at 17 U.S.C. §§501(a), 511).

of College Savings, Florida Prepaid, and Kimel v. Fla. Bd. of Regents, 2000 WL 14165 (Jan. 11, 2000), is whether Congress had authority to abrogate state sovereign immunity in the Acts.

The first opinion in this case followed the Parden theory that states can impliedly waive their sovereign immunity and, on that basis, held that the University could be sued in federal court for violating the two statutes. See Chavez v. Arte Publico Press, 59 F.3d 539, 547 (5th Cir. 1995) [hereinafter Chavez I]; see Parden v. Terminal Ry. Of Ala. State Docks Dep't, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964).

After the Supreme Court remanded for reconsideration in light of Seminole, we concluded that Parden's implied waiver theory was no longer viable. See Chavez v. Arte Publico Press, 157 F.3d 282, 287 (5th Cir. 1998) [hereinafter Chavez II]. Taking Seminole in conjunction with City of Boerne v. Flores, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624, we held that the Copyright Remedy Clarification Act (hereinafter CRCA) and the Trademark Remedy Clarification Act (hereinafter TRCA) were invalid exercises of Article I legislative power. Further, upholding the statutes as valid exercises of legislative power pursuant to section 5 of the Fourteenth Amendment would be an impermissible end-run around Seminole. Id. Chavez II was vacated by the court's vote for en banc reconsideration, but the case was remanded to this panel after College Savings and Florida Prepaid were decided.

3

Chavez and the *amici* who have filed supplemental post-remand briefs contend that the CRCA validly enforces the due process clause of the Fourteenth Amendment. And for the first time in this case, they defend the CRCA as a means of enforcing the privileges or immunities clause of the Fourteenth Amendment.[3] While Chavez's arguments are interesting, we again find them unpersuasive.[4]

A) Section 5 of the Fourteenth Amendment

Chavez and *amici* justify the CRCA's abrogation of state Eleventh Amendment immunity under section 5 of the Fourteenth Amendment, because Congress acted to prevent states from depriving copyright holders of their property without due process of law. They contend that the legislative history demonstrates that the waiver effected by the CRCA is proportional to its remedial object.[5]

The University of Houston preliminarily counters that since Congress relied only on the copyright clause of Article I in enacting the CRCA, we may not consider another ground of

---

[3]     Chavez has conceded that, in the light of <u>College Savings</u>, the TRCA is not a valid exercise of legislative authority, and she no longer seeks to defend it.

[4]     Senator Leahy has recently introduced a bill, entitled the "Intellectual Property Protection Restoration of 1999," to restore federal remedies for violations of intellectual property rights by States. Senator Leahy describes that legislation as providing a damages remedy to redress constitutional violations and ensuring the availability of the full range of prospective equitable relief. <u>See</u> 145 Cong. Rec. S13552-04, S13558 (daily ed. Oct. 29, 1999) (statement of Sen. Leahy).

[5]     As <u>Chavez II</u> predicted, <u>College Savings</u> expressly overruled <u>Parden</u> and its implied waiver theory. <u>See</u> <u>College Savings</u>, 119 S.Ct. at 2228. That theory is no longer available to support an Article I abrogation of Eleventh Amendment Immunity.

constitutionality -- the Fourteenth Amendment -- that Congress did not invoke.  The most recent Supreme Court authority supports this position.  In a footnote in Florida Prepaid, the Court declined to consider the Just Compensation clause as a basis for the PRCA, stating:

> There is no suggestion in the language of the statute itself, or in the House or Senate Reports of the bill which became the statute, that Congress had in mind the Just Compensation Clause of the Fifth Amendment.  Since Congress was so explicit about invoking its authority under Article I and its authority to prevent a State from depriving a person of property without due process of law under the Fourteenth Amendment, we think this omission precludes consideration of the Just Compensation Clause as a basis for the Patent Remedy Act.

Florida Prepaid, 119 S.Ct. at 2208 n.7.  Earlier Supreme Court jurisprudence was unsettled on this point.  Proceeding chronologically, the Court first held that the "constitutionality of action taken by Congress does not depend on recitals of the power which it undertakes to exercise."  Woods v. Cloyd W. Miller Co., 333 U.S. 138, 144, 68 S.Ct. 421, 424, 92 L.Ed. 596 (1948).  In its next brush with the issue, the Court held that "because [legislation to enforce the Fourteenth Amendment] imposes congressional power on a state involuntarily, and because it often intrudes on traditional state authority, we should not quickly attribute to Congress an unstated intent to act under its authority to enforce the Fourteenth Amendment."  Pennhurst State School v. Halderman, 451 U.S. 1, 15, 101 S.Ct. 1531, 1539, 67 L.Ed.2d 694 (1981).  Following Pennhurst,

5

however, the Court appeared to retrench when it stated it must "be able to discern some legislative purpose or factual predicate that supports the exercise of [Fourteenth Amendment] power. That does not mean, however, that Congress need anywhere recite the words 'section 5' or 'Fourteenth Amendment' or 'equal protection.'" EEOC v. Wyoming, 460 U.S. 226, 243 n.18, 103 S.Ct. 1054, 1064 n.18, 75 L.Ed.2d 18 (1983). Even if Florida Prepaid, a majority opinion, does not rule out Chavez's reliance on the implicit authority of the Fourteenth Amendment, we hold on the merits that the CRCA did not properly enforce the due process clause.

Congress can abrogate the states' sovereign immunity when acting to enforce constitutional rights pursuant to section 5 of the Fourteenth Amendment. See Seminole, 116 S.Ct. at 1128 (citing Fitzpatrick v. Bitzer, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976)). City of Boerne, however, states that when Congress legislates pursuant to section 5, "there must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." City of Boerne, 117 S.Ct. at 2164. Florida Prepaid applied the principles of City of Boerne to the PRCA, a statute analogous to the CRCA in the patent field. The analytical framework that Florida Prepaid sets forth requires examination of three aspects of the legislation: 1) the nature of the injury to be remedied; 2) Congress's consideration of the adequacy of state remedies to redress the injury; and 3) the

6

coverage of the legislation. This framework was recently reconfirmed by the Court in <u>Kimel</u>, <u>supra</u>.

The first consideration is the nature of the injury to be remedied and whether the state's conduct evinced a pattern of constitutional violations. <u>See</u> <u>Florida Prepaid</u>, 119 S.Ct. at 2207. The underlying conduct at issue here is state infringement of copyrights, rather than patents, and the "constitutional injury" consists of possibly unremedied, or uncompensated, violation of copyrights by states. <u>See</u> H.R. Rep. No. 101-282, pt.1, at 3 (1989), <u>reprinted in</u> 1990 U.S.C.C.A.N. 3949, 3951 [hereinafter H.R. Rep.]. Such infringements, it is contended, would "take" the copyright owners' property without due process of law.[6]

The Supreme Court concluded in <u>Florida Prepaid</u> that "Congress identified no pattern of patent infringement by the States, let alone a pattern of constitutional violations." <u>Florida Prepaid</u>, 119 S.Ct. at 2207. Although the legislative history for the CRCA documents a few more instances of copyright infringement than the PRCA legislative history did of patent violations, the CRCA's history exhibits similar deficiencies. For example, testimony before the House Subcommittee in favor of the CRCA

---

[6] In <u>Chavez II</u>, we said that whether copyrights were a form of property protectable against the states raised troubling issues. The Supreme Court held in <u>Florida Prepaid</u> that patents are considered property within the meaning of the due process clause. <u>See</u> <u>Florida Prepaid</u>, 119 S.Ct. at 2208. Since patent and copyright are of a similar nature, and patent is a form of property protectable against the states, copyright would seem to be so too.

7

acknowledged that "the States are not going to get involved in wholesale violation of the copyright laws." Copyright Remedy Clarification Act and Copyright Office Report on Copyright Liability of States: Hearings Before the Subcomm. on Courts, Intellectual Property, and the Administration of Justice of the House Comm. on the Judiciary, 101st Cong. 53 (1989) [hereinafter House Hearings] (statement of Ralph Oman, Register of Copyrights, Library of Congress).[7] In addition, the bill's sponsor stated that "thus far there have not been any significant number of wholesale takings of copyright rights by States or State entities." Id., at 48 (statement of Rep. Kastenmeier).

At the request of Congress, the Copyright Office reported on the relation between the states' copyright liability and the Eleventh Amendment; in that report, no more than seven incidents of State copyright infringement enabled by the Eleventh Amendment were documented. Register of Copyrights, Copyright Liability of States and the Eleventh Amendment 5-9 (1988) [hereinafter Copyright Office Report]. Nor did the Senate hear evidence of a pattern of unremedied copyright infringement by the States. Rather than expose a current epidemic of unconstitutional deprivations, the testimony before Congress worried principally about the *potential* for future abuse, see House Hearings, at 7 (statement of Ralph Oman), and the

---

[7] Mr. Oman also stated that "[the States] are all respectful of the copyright laws." House Hearings, at 8.

8

concerns of copyright owners about that potential, see Copyright Office Report, at 5-17. Compare Florida Prepaid, 119 S.Ct. at 2207 ("At most, Congress heard testimony that patent infringement by States might increase in the future.").

Second, we consider whether Congress studied the existence and adequacy of state remedies for injured copyright owners when a state infringes their copyrights. See Florida Prepaid, 119 S.Ct. at 2208. The legislative histories of the PRCA and CRCA are again parallel. In each case, Congress barely considered the availability of state remedies for infringement. See Florida Prepaid, 119 S.Ct. at 2209 (finding no evidence that Congress considered whether patent infringement remedies were available in the states). With regard to the CRCA, one witness testified that his company's attorneys told him that state and local courts were unavailable because only federal courts can hear copyright infringement cases. See House Hearings, at 51 (statement of James Healy, Vice President of Enterprise Media). In addition, the Copyright Office provided a survey of state waivers of Eleventh Amendment immunity as an appendix to its report. See Congressional Research Service, Waiver of Eleventh Amendment Immunity from Suit: State Survey Relating to Copyright Infringement Claims (1988) (Appendix C to the Copyright Office Report). These are the only two allusions to state remedies in the legislative history. While Congress referred briefly to the Copyright Office's report in the House Report on the bill, Appendix

9

C was mentioned neither in the House Report nor in any of the congressional hearings. Furthermore, as pointed out in a statement submitted to Congress, the survey failed to include information on state remedies for the unlawful taking of private property by the state government. See The Copyright Remedy Clarification Act: Hearing Before the Subcomm. on Patents, Copyrights and Trademarks of the Senate Comm. on the Judiciary, 101st Cong. 123 (1989) [hereinafter Senate Hearing] (statement on behalf of the Educators' Ad Hoc Committee on Copyright Law). As noted in Chavez II, there are other possible remedies in state courts -- breach of contract claims, for example -- that Congress also never considered.[8]

As if to emphasize its lack of interest in state remedies, Congress rejected the idea of granting state courts concurrent jurisdiction over copyright cases, an alternative solution that would have avoided any Eleventh Amendment problems. Congress rejected this solution not because it was an inadequate remedy, but because Congress believed concurrent jurisdiction would undermine the uniformity of copyright law. See H.R. Rep., at 9. Although uniformity is undoubtedly an important goal, "that is a factor which belongs to the Article I patent-power calculus, rather than to any determination of whether a state plea of sovereign immunity deprives

---

[8] Instead of considering the adequacy of possible state remedies, Congress focused on the adequacy of injunctive relief, stating that injunctive relief was not adequate protection for copyright owners. See H.R. Rep, at 8.

10

a patentee of property without due process of law." Florida Prepaid, 119 S.Ct. at 2209. The same is true here.

Finally, Florida Prepaid examined the breadth of coverage of the legislation. See id. at 2210. In enacting legislation pursuant to section 5 of the Fourteenth Amendment, Congress should ensure that there is "a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." City of Boerne, 521 U.S. at 520; see also id. at 533 ("Where, however, a congressional enactment pervasively prohibits constitutional state action in an effort to remedy or to prevent unconstitutional state action, limitations ... tend to ensure Congress' [sic] means are proportionate to ends legitimate under §5."). As the Court noted in Florida Prepaid, Supreme Court jurisprudence indicates that a deprivation, to fit the meaning of the due process clause, must be intentional; a negligent act that causes unintended injury is not sufficient. See Florida Prepaid, 119 S.Ct. at 2209. Copyright infringement actions, like those for patent infringement, ordinarily require no showing of intent to infringe. Instead, knowledge and intent are relevant in regard to damages. See 1 Neil Boorstyn, Boorstyn on Copyright §12.15 (2d ed. 1999) ("Although defendant's innocent intent is no defense to an infringement action, it may affect recoverable damages"); compare Florida Prepaid, 119 S.Ct. at 2209 ("Actions predicated on direct patent infringement ... do not require any showing of intent to

11

infringe; instead, knowledge and intent are considered only with respect to damages."). In addition, Mr. Oman, the Register of Copyrights, acknowledged that most copyright infringement by states is unintentional, stating that "[the States] would want [immunity] only as a shield for the State treasury from the occasional error or misunderstanding or innocent infringement." House Hearings, at 8. In enacting the CRCA, however, Congress did nothing "to confine the reach of the Act by limiting the remedy to certain types of infringement, . . . or providing for suits only against States with questionable remedies or a high incidence of infringement." Florida Prepaid, 119 S.Ct. at 2210. Its "indiscriminate scope" cannot be reconciled with the principle that legislation pursuant to the due process clause of the Fourteenth Amendment must be proportionate to legitimate section 5 ends. See id.

Since the record does not indicate that Congress was responding to the kind of massive constitutional violations that have prompted proper remedial legislation, that it considered the adequacy of state remedies that might have provided the required due process of law, or that it sought to limit the coverage to arguably constitutional violations, we conclude that the CRCA is, like the PRCA, an improper exercise of Congressional legislative power. The Court said in Florida Prepaid that PRCA's "apparent and more basic aims were to provide a uniform remedy for patent infringement and to place States on the same footing as private parties under that

12

regime.  These are proper Article I concerns, but that Article does not give Congress the power to enact such legislation after <u>Seminole Tribe</u>."  <u>Florida Prepaid</u>, 119 S.Ct. at 2211.  The same can be said about the CRCA,[9] which is doomed in the wake of <u>Florida Prepaid</u> and <u>Kimel</u>.[10]

B) The Privileges and Immunities Clause

Chavez also argues that the CRCA is a proper exercise of section 5 power to enforce the privileges and immunities clause of the Fourteenth Amendment.  She argues that since copyright is a form of property and an originalist interpretation of the privileges and immunities clause protects the right to acquire and control property, that clause protects the right to acquire and enforce a copyright.  Chavez buttresses this argument by reference to the Supreme Court's recent opinion that appeared to revive the long-nascent privileges and immunities clause.  <u>Saenz v. Roe</u>, 526 U.S. 489, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999).  She further asserts that the <u>Slaughterhouse Cases</u> are not to the contrary since they

---

[9]    <u>See</u> H.R. Rep., at 9-11 (noting that uniformity concerns militated against granting concurrent jurisdiction to state courts and that immunity introduced a disparity between state and private educational institutions); Senate Hearings, at 129 (statement by Sen. DeConcini that the disparity in liability for copyright infringement between state and private educational institutions is a difficult situation).

[10]    Our conclusion is buttressed by the fact that the Copyright Office recommended that, if <u>Union Gas</u> held that Congress could not abrogate state sovereign immunity under its Article I powers, Congress provide for concurrent jurisdiction where states are defendants in copyright infringement damages cases. <u>See</u> Copyright Office Report, at ix.  Other witnesses also treated the holding in <u>Union Gas</u> as a prerequisite to the passage of the CRCA.  <u>See</u> House Hearings, at 160 (statement by Professors Leo J. Raskind, David Shipley and Peter Jassi).

13

hold only that the privileges and immunities clause does not protect rights secured by state law; a copyright is a right secured by Federal law. See Slaughter-House Cases, 83 U.S. (16 Wall.) 36, 74 (1872).

Two propositions dispose of the viability of these arguments in the present case. First, if the Slaughterhouse Cases actually supported Chavez's position, she could have claimed a deprivation of the privileges and immunities clause from the outset of this litigation. Second, Chavez's attempt to piggyback on Saenz, where the Supreme Court has provided no guidance for its "modern" interpretation of the clause, asks more of this court than it should give. Litigation must run its course at some point. Chavez has held ample opportunity to develop novel theories of recovery in the last years of litigation.

## CONCLUSION

For the foregoing reasons, we conclude that Chavez's action may not be maintained in federal court against the University of Houston, Arte Publico Press, and Nicholas Kanellos in his official capacity. The district court's judgment is Vacated, and the case is remanded with instructions to Dismiss insofar as these defendants are sued for money damages.

**VACATED and REMANDED with Instructions to DISMISS.**

14