Opinion issued June 11, 2019



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00534-CV

———————————

**UNIVERSITY OF HOUSTON SYSTEM, Appellant**

**V.**

**JIM OLIVE PHOTOGRAPHY, D/B/A PHOTOLIVE, Appellee**

---

**On Appeal from the 295th District Court**
**Harris County, Texas**
**Trial Court Case No. 2017-84942**

---

## O P I N I O N

In this interlocutory appeal from the trial court's denial of a plea to the jurisdiction, we must determine if a viable constitutional takings claim can be asserted when the State commits copyright infringement. We conclude that a

governmental unit's copyright infringement is not a taking and that the trial court therefore erred in denying the plea to the jurisdiction.

## Background

Jim Olive Photography d/b/a Photolive, Inc. (Olive) sued the University of Houston System, alleging an unlawful taking and seeking just compensation under Article I, Section 17 of the Texas Constitution and under the Fifth Amendment of the United States Constitution. Olive, a professional photographer, alleges that he took a series of aerial photographs of the City of Houston at dusk in 2005. To take these photographs, Olive rented a helicopter, hired a pilot, and, utilizing special photography equipment, suspended himself from the helicopter with a harness. While suspended in the harness, Olive took photograph SKDT1082—"The Cityscape"— the subject of this litigation.

Olive registered The Cityscape with the United States Copyright Office on November 18, 2005 and displayed it for purchase on his website. Olive owned all rights associated with The Cityscape, and his website had numerous references to licensing the website's photographs, including an entire page labeled "Copyrights and Usage," which described the applicable copyright protections held in the photographs and explicitly stated that "[t]he unauthorized use of these images is strictly prohibited."

Olive alleges that sometime around June of 2012, the University of Houston downloaded The Cityscape from Olive's website, removed all identifying copyright and attribution material, and displayed it on several webpages to promote the University's C.T. Bauer College of Business. The University never contacted Olive about using his photograph and never compensated him for its use.

Over three years later, Olive discovered that his photograph was being displayed on the University's Bauer College of Business webpages. Olive informed the University of its unauthorized use of the photograph and demanded that it cease and desist this use. The University immediately removed the photograph from the College's website. Olive further alleges that the University's display of the photograph without attribution allowed private actors such as Forbes Magazine to republish and display The Cityscape without Olive's permission and without compensation.

Upon being sued by Olive, the University filed a plea to the jurisdiction, asserting, among other things, that because Olive failed to plead a viable takings claim, the University retains governmental immunity and the trial court lacks subject-matter jurisdiction. The trial court denied the plea, and this interlocutory appeal followed.

The University argues in four issues that the trial court erred in denying its plea. The University first argues that a copyright is not property under the federal

or state takings clauses. The University then argues that, if a copyright is property under the federal or state takings clauses, its copyright infringement of Olive's photograph is not a taking, that it lacked capacity to take Olive's copyright property, and that Olive did not sufficiently plead an intentional taking.

**Standard of Review**

The standard of review of a trial court's ruling on a plea to the jurisdiction based on governmental immunity is de novo. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004); *Tex. So. Univ. v. Gilford*, 277 S.W.3d 65, 68 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The plaintiff has the burden to allege facts that affirmatively demonstrate the trial court's subject-matter jurisdiction. *Gilford*, 277 S.W.3d at 68 (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). We construe the pleadings liberally and accept the plaintiff's factual allegations as true. *See Miranda*, 133 S.W.3d at 226–27; *Gilford*, 277 S.W.3d at 68.

An inverse-condemnation action is a constitutional claim in which the property owner asserts that a governmental entity intentionally performed acts that resulted in a "taking" of the property for public use, without formally condemning the property. *See, e.g.*, *Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 554 (Tex. 2004). The Texas Constitution's takings clause (Article I, Section 17) includes personal property. *Renault, Inc. v. City of Houston*, 415 S.W.2d 948, 952

4

(Tex. Civ. App.—Waco 1967), *rev'd on other grounds*, 431 S.W.2d 322 (Tex. 1968). It is well settled that the Texas Constitution waives governmental immunity for an inverse-condemnation (a takings) claim, but in the absence of a properly pleaded takings claim, the governmental entity retains immunity. *City of Houston v. Carlson*, 451 S.W.3d 828, 830 (Tex. 2014).

Whether the pleaded facts constitute a viable takings claim is a question of law. *See Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 390 (Tex. 2011); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 932–33 (Tex. 1998); *City of Friendswood v. Horn*, 489 S.W.3d 515, 525 (Tex. App.—Houston [1st Dist.] 2016, no pet.). When the plaintiff cannot establish a viable takings claim, the trial court lacks subject-matter jurisdiction and should grant a plea to the jurisdiction. *Tex. Dep't of Transp. v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 166 (Tex. 2013).

## Analysis

### Copyright generally

Federal copyright law provides that "[c]opyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102(a).

5

Copyright has been defined as:

> The right to copy; specifically, a property right in an original work of authorship (including literary, musical, dramatic, choreographic, pictorial, graphic, sculptural, and architectural works; motion pictures and other audiovisual works; and sound recordings) fixed in any tangible medium of expression, giving the holder the exclusive right to reproduce, adapt, distribute, perform, and display the work.

*Copyright*, BLACK'S LAW DICTIONARY (10th ed. 2014); *see also* 17 U.S.C. § 102(a) (1–8) (providing categories of works of authorship to include literary works; musical works, including any accompanying words; dramatic works, including any accompanying music; pantomimes and choreographic works; pictorial, graphic, and sculptural works; motion pictures and other audiovisual works; sound recordings; and architectural works).

A copyright in a work subsists from its creation and generally endures for the life of the author and 70 years after the author's death. *See* 17 U.S.C. § 302(a). Civil remedies for copyright infringement include injunctive relief. 17 U.S.C. § 502(a). A copyright owner can also seek money damages from an infringer: either (1) his actual damages and any additional profits of the infringer, or (2) statutory damages, including a sum of not more than $150,000 for willful infringement.[1] *See* 17 U.S.C. § 504. Federal courts have original and exclusive

---

[1] Olive's petition seeks monetary relief over $100,000 but not more than $200,000. The record does not reflect the basis of this claim for damages or whether it is

jurisdiction of copyright claims, 28 U.S.C. § 1338(a), and all state-law claims arising under federal law relating to copyrights are preempted by federal law. 17 U.S.C. § 301(a); *see Butler v. Cont'l Airlines, Inc.*, 31 S.W.3d 642, 648–52 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).

In the case of copyright infringement by a state actor, states have Eleventh Amendment immunity from a suit for money damages in federal court. *See Chavez v. Arte Publico Press*, 204 F.3d 601, 607–08 (5th Cir. 2000) (*Chavez III*) (discussed below) (in copyright-infringement action against University of Houston, holding that Copyright Remedy Clarification Act (CRCA), 17 U.S.C. § 511, which purported to abrogate Eleventh Amendment immunity and to provide for state liability for copyright infringement, was unconstitutional); *see also Allen v. Cooper*, 895 F.3d 337, 347–54 (4th Cir. 2018) (same), *pet. for cert. filed*, (U.S. Jan. 4, 2019) (No. 18-877); *Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of Univ. Sys. of Ga.*, 633 F.3d 1297, 1312–19 (11th Cir. 2011) (same); *Richard Anderson Photography v. Brown*, 852 F.2d 114, 120 (4th Cir. 1988) (holding that state

related to the statutory damages of not more than $150,000 for willful infringement under 17 U.S.C. § 504(c)(2). *See generally* Thomas F. Cotter, *Do Federal Uses of Intellectual Property Implicate the Fifth Amendment?*, 50 FLA. L. REV. 529, 562–63 (1998) (asserting that, because copyright is "nonrivalrous," "[a]ll that the intellectual property owner loses" from the government's use of a copyright, "except in those rare circumstances in which government use destroys virtually all of the property's value, is some licensing revenue."). "Nonrivalrous means that another person can use it without simultaneously depriving anyone else of its use." *Id.* at 563.

university had Eleventh Amendment immunity against photographer's copyright-infringement action). *See generally* 3 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 12.01[E][2] (Rev. Ed. 2019); 6 WILLIAM F. PATRY, PATRY ON COPYRIGHT § 21.88 (Mar. 2019). But a copyright owner can obtain prospective injunctive relief for copyright infringement by a state actor under the *Ex parte Young* doctrine.[2] *See, e.g.*, *Nat'l Ass'n of Bds. of Pharmacy*, 633 F.3d at 1307–12 (addressing claim for injunctive relief under *Ex parte Young* doctrine against state university for ongoing copyright infringement); *Hairston v. N.C. Agric. & Tech. State Univ.*, No. 1:04 CV 1203, 2005 WL 2136923, at *8 (M.D.N.C. Aug. 5, 2005) ("[T]he court finds that Plaintiff sufficiently alleges an ongoing violation of federal copyright law by Defendants, and the *Ex parte Young* doctrine therefore applies to his copyright infringement claim seeking prospective injunctive relief from Defendants.").

Copyright infringement, whether common law or statutory, is a tort. *Porter v. United States*, 473 F.2d 1329, 1337 (5th Cir. 1973); *Ted Browne Music Co. v. Fowler*, 290 F. 751, 754 (2d Cir. 1923) (stating courts "have long recognized that infringement of a copyright is a tort"). Texas has not waived sovereign (governmental) immunity in the Texas Tort Claims Act for copyright infringement

---

[2]     *Ex parte Young*, 209 U.S. 123 (1908).

by a governmental unit. *See* TEX. CIV. PRAC. & REM. CODE § 101.021(1) (providing for limited waiver of governmental immunity for claims of property damage, personal injury, or death proximately caused by wrongful or negligent conduct of governmental employee arising out of (1) use of publicly owned motor-driven equipment or motor vehicle, (2) premises defects, and (3) conditions or uses of certain property); *see also Schneider v. Ne. Hosp. Auth.*, No. 01-96-01098-CV, 1998 WL 834346, at *2 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (not designated for publication) ("It is up to the legislature to add the tort of trademark infringement to those torts for which immunity is statutorily waived."). Nor has Texas waived its Eleventh Amendment immunity by consenting to suit in federal court for copyright infringement. *See generally Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–55, 67–72 & n.14 (1996)

**Intellectual Property and Takings**

In apparent recognition of the above legal landscape that forecloses a copyright owner's claim for copyright infringement against a state actor, Olive has asserted his constitutional takings claims against the University. The Texas Constitution's Takings Clause provides: "No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation

9

being made." TEX. CONST. art. I, § 17(a).[3]

The federal takings clause protects both real property and personal property. *Horne v. Dep't of Agric.*, 135 S.Ct. 2419, 2425–26 (2015) (holding that raisins were subject of government taking: "The Government has a categorical duty to pay just compensation when it takes your car, just as when it takes your home."). A copyright, which is intellectual property,[4] is a protected property interest.[5] *Nat'l Ass'n of Bds. of Pharmacy*, 633 F.3d at 1317; *see also* 17 U.S.C. § 201(d) ("The

---

[3]     The Fifth Amendment prohibits the taking of "private property [] for public use, without just compensation." U.S. CONST. AMEND. V. Texas courts look to federal takings jurisprudence for guidance. *Sheffield Dev. Co. v. City of Glenn Heights*, 140 S.W.3d 660, 669 (Tex. 2004). The protections of the Texas Constitution's Takings Clause are presumed to be coextensive with the federal protections, absent a showing that the Texas provision was intended to apply more broadly. *See Mayhew*, 964 S.W.2d at 932.

[4]     Intellectual property is a "category of intangible rights protecting commercially valuable products of the human intellect," and the "category comprises primarily trademark, copyright, and patent rights, but also includes trade-secret rights, publicity rights, moral rights, and rights against unfair competition." *Intellectual property*, BLACK'S LAW DICTIONARY (10th ed. 2014).

[5]     Other types of intellectual property—patents, trademarks, and trade secrets—are recognized as "property" or a protected "property interest" for due-process purposes. *See Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Savs. Bank*, 527 U.S. 627, 642 (1999) ("Patents, however, have long been considered a species of property."); *Coll. Savs. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 673 (1999) ("trademarks" are a "constitutionally cognizable property interest[]" and "are the 'property' of the owner because he can exclude others from using them"); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) (holding that trade secrets are property under applicable state law and subject to federal takings clause); *see also Schneider*, 1998 WL 834346, at *2 ("Clearly, a trademark is property.").

10

ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law, and may be bequeathed by will or pass as personal property by the applicable laws of intestate succession."). *See generally* Pascale Chapdelaine, *The Property Attributes of Copyright*, 10 BUFF. INTELL. PROP. L.J. 34 (2014). But while a copyright is "property" or a protected "property interest" for due-process purposes, that does not necessarily mean that it is property for purposes of the takings clause. *See, e.g.*, Davida H. Isaacs, *Not All Property Is Created Equal: Why Modern Courts Resist Applying the Takings Clause to Patents, and Why They Are Right to Do So*, 15 GEO. MASON L. REV. 1, 36 (2007) ("Being property is a necessary requirement for Takings Clause protection, but it is not a sufficient one.").

In 2008, it was noted that whether copyright is property under the takings clause is "as yet unlitigated."[6] Tom W. Bell, *Copyright as Intellectual ~~Property~~*

---

[6] The Fifth Circuit has also pointed out this dearth of authority:

> Copyrights are indeed a species of property, but the extent to which they are protectable against the states raises troubling issues. In *Seminole,* the Supreme Court noted the absence of caselaw authority over the past 200 years dealing with enforcement of copyrights in federal courts against the states. Surely this dearth implies that there has been no claim against states in the federal courts.

*Chavez v. Arte Publico Press*, 157 F.3d 282, 288 (5th Cir.) (*Chavez II*) (citing *Seminole Tribe*, 517 U.S. at 71 & n.16), *reh'g en banc granted and opinion*

11

*Privilege*, 58 SYRACUSE L. REV. 523, 538 (2008). *But see Porter*, 473 F.2d at 1337 (copyright "infringement is not a 'taking' as the term is constitutionally understood") (discussed below). Relying on *Zoltek Corp. v. United States*, 442 F.3d 1345, 1350–53 (Fed. Cir. 2006) (holding that patent infringement by federal government does not constitute taking under Fifth Amendment), *cert. denied*, 551 U.S. 1113 (2007), *vacated on other grounds on reh'g en banc*, 672 F.3d 1309 (Fed. Cir. 2012), and the Supreme Court's denial of certiorari in *Zoltek*, the author asserts that *Zoltek* "strongly suggests that the same outcome would obtain for copyrights." Bell, 58 SYRACUSE L. REV. at 538; *see also* Isaacs, 15 GEO. MASON. L. REV. at 1–2, 6–17 (discussing *Zoltek*). *But see* Note, *Copyright Reform and the Takings Clause*, 128 HARV. L. REV. 973 (2015) (arguing that copyright should be protected by takings clause).[7] The author further argues that the Supreme Court's

---

*vacated*, 178 F.3d 281 (5th Cir. 1998), *remanded to panel for reconsideration*, 180 F.3d 674 (5th Cir. 1999), *panel op. on reconsideration*, *Chavez III*, 204 F.3d 601.

[7]     This Note collects, in addition to Cotter and Isaacs, other scholars' articles on the subject of intellectual property and takings. Note, 128 HARV. L. REV. at 974 nn.12-13 (citing Christina Bohannon, *Reclaiming Copyright*, 23 CARDOZO ARTS & ENT. L.J. 567 (2006); Shubha Ghosh, *Toward a Theory of Regulatory Takings for Intellectual Property: The Path Left Open After* College Savings v. Florida Prepaid, 37 SAN DIEGO L. REV. 637 (2000); Roberta Rosenthal Kwall, *Governmental Use of Copyrighted Property: The Sovereign's Prerogative*, 67 TEX. L. REV. 685, 755 (1989); Adam Mossoff, *Patents as Constitutional Private Property: The Historical Protection of Patents Under the Takings Clause*, 87 B.U. L. REV. 689 (2007); and John C. O'Quinn, *Protecting Private Intellectual*

"definition of 'property' appears not to shelter copyright" because of its description of the sources of property interests protected from takings[8] and "copyrights exist only by the grace of the Constitution."[9] *Id.*

No Texas case appears to have addressed whether a copyright is property for purposes of the takings clause and whether copyright infringement by a state actor is a taking. The case closest on point is our unpublished 1998 decision in *Schneider*, 1998 WL 834346. There, after recognizing that a trademark is property, this court squarely held that a governmental entity's (a hospital authority's) "trademark infringement is not a compensable taking; thus, sovereign immunity is not waived on the basis of an unconstitutional taking."[10] *Id.* at *2. After noting that no authority classified trademarks as property for purposes of the takings clause,

---

*Property from Government Intrusion: Revisiting* SmithKline *and the Case for Just Compensation*, 29 PEPP. L. REV. 435 (2002)).

[8]  "[P]roperty interests . . . are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Ruckelshaus*, 467 U.S. at 1001 (quoting *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 156, 161 (1980)) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

[9]  U.S. CONST. art. 1, § 8, cl. 8 ("The Congress shall have Power . . . To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries").

[10]  A "trademark" is a "word, phrase, logo, or other sensory symbol used by a manufacturer or seller to distinguish its products or services from those of others." *Trademark*, BLACK'S LAW DICTIONARY (10th ed. 2014).

this court stated that, to the contrary, "there is authority that refutes such a classification" and cited *Porter* for the proposition that copyright infringement is not a taking.[11] *Id.* at \*2 (citing *Porter*, 473 F.2d at 1337). We therefore turn to *Porter* and the other federal cases relied on by the parties for their respective positions.

### *Porter v. United States*

*Porter* involved in part a claim by Lee Harvey Oswald's widow for the diminution in the copyright value of Oswald's writings because of their publication in the Warren Commission report. *Porter*, 473 F.2d at 1336.

> We turn finally to the question whether Mrs. Porter can recover for the diminution in value of Oswald's writings attributable to their publication in the Warren Commission Report. It is, of course, quite plain that the recovery sought here is for infringement by the government of Mrs. Porter's common law copyright interest in Oswald's writings. *Such infringement is not a "taking" as the term is constitutionally understood*. Rather, it has always been held that infringement of copyright, whether common law, *Twentieth Century Fox Film Corp. v. Dieckhaus*, 153 F.2d 893 (CA 8, 1948), or statutory, *Turton v. United States*, 212 F.2d 354 (CA 6, 1954) constitutes a tort.

---

[11] This court also cited *Garcia v. Peeples*, 734 S.W.2d 343 (Tex. 1987) (orig. proceeding) as supporting authority. *Schneider*, 1998 WL 834346, at \*2. In *Garcia*, a product-liability suit, our supreme court rejected an automaker's claim that a plaintiff's shared discovery of the automaker's trade secrets (which the court recognized as property) with only similarly situated litigants under a properly tailored protective order would be "an unconstitutional deprivation of property" that "rises to the level of a constitutional taking." *Garcia*, 734 S.W.2d at 348 n.4.

14

*Id.* at 1337 (emphasis added). *But see Roth v. Pritikin*, 710 F.2d 934, 939 (1st Cir. 1983) ("An interest in a copyright is a property right protected by the due process and just compensation clauses of the Constitution.").

Olive characterizes *Porter* as anomalous[12] and as superseded by both the Supreme Court in *Horne* and the Fifth Circuit in *Chavez*. Because *Horne* involved the taking of raisins—which are tangible personal property, not intangible intellectual property—it is inapposite; further, it made no attempt to address intellectual property.

As noted above, *Chavez*, in part a copyright-infringement action against the University of Houston, held that Congress, by enacting the CRCA, could not subject states to suit in federal court for copyright infringement because of Eleventh Amendment immunity. *Chavez III*, 204 F.3d at 607–08. In passing on the constitutionality of the CRCA—*Chavez* was *not* a takings case—the court addressed copyright as property for due-process purposes and considered whether Congress could abrogate state Eleventh Amendment immunity under section 5 of the Fourteenth Amendment "to prevent states from depriving copyright holders of their property without due process of law." *Id.* at 604; *see id.* at 605–07. In its analysis, the court stated that the "underlying conduct at issue here is state

---

[12] We disagree that *Porter* is an anomaly, but because of its subject matter, it is undoubtedly *sui generis*.

infringement of copyrights, rather than patents, and the 'constitutional injury' consists of possibly unremedied, or uncompensated, violation of copyrights by states." *Id.* at 605. The court then noted:

> In *Chavez II*, we said that whether copyrights were a form of property protectable against the states raised troubling issues. The Supreme Court held in *Florida Prepaid* that patents are considered property within the meaning of the due process clause. *See Florida Prepaid*, 119 S.Ct. at 2208. Since patent and copyright are of a similar nature, and patent is a form of property protectable against the states, copyright would seem to be so too.

*Id.* at 605 & n.6.

We do not view *Chavez III* as superseding *Porter*; instead, these comments concerned due-process protection of property from deprivation, rather than from a taking, as did the Supreme Court's due-process description of patents as property in *Florida Prepaid*. *See Fla. Prepaid*, 527 U.S. at 642 ("patents may be considered 'property' for purposes of our analysis"); *see also* Carlos Manuel Vazquez, *What is Eleventh Amendment Immunity?*, 106 Yale L.J. 1683, 1745 n.281 (1997) ("the Court has interpreted the term "property" in the Takings Clause more narrowly than the same term in the Due Process Clause").

*Chavez II* touches on copyright as property for takings purposes, citing and discussing *Roth* (which we address below). *Chavez II*, 157 F.3d at 288. In dicta, and after distinguishing *Roth* because it was not a copyright-infringement action

16

against a state and after highlighting *Roth*'s statement as dicta,[13] *Chavez II* noted—"[o]nly slightly more apropos of [*Roth*'s] discussion"—that the Supreme Court held that trade secrets are property protected by the Fifth Amendment takings clause in *Ruckleshaus v. Monsanto Co.* and that, "[b]y analogy, copyrights constitute intangible property that, for some purposes at least, receives constitutional protection." *Chavez II*, 157 F.3d at 288 (citing *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) (holding that trade secrets are property under applicable state law and subject to federal takings clause). *Chavez II* thus stops short of stating that copyright is property protected by the takings clause and does not purport to supersede *Porter*'s contrary statement.

### Roth v. Pritikin

*Roth* is Olive's principal authority for his contention that copyright is property protected by the takings clause, but on close examination, we find *Roth*'s statement to be both unsupported and dicta. Moreover, *Roth* did not involve a copyright-infringement claim against a state; it involved a dispute over Roth's recipes that were used in a bestselling diet book. The 1977 oral contract to use Roth's recipes provided for only a flat fee to Roth as a "writer for hire," with her having no interest in the book's copyright and royalties, as found by the district

---

[13]     *See Chavez II*, 157 F.3d at 288 ("In *Roth*, the Second Circuit was speculating on the entirely different issue of. . . .").

court. *Roth*, 710 F.2d at 936. Roth argued that if an oral contract for payment for her recipes had been made in 1977, it was invalidated by the subsequent enactment of the Copyright Act of 1978, which she contended applied retroactively and which required a work-for-hire agreement with no ownership interest in a copyright to be expressly agreed to in a signed and written agreement.[14] *Id.* at 938. The parties and the Second Circuit agreed that if the oral contract was governed by the law in effect in 1977, it properly divested Roth of any rights to a share of the book's royalties that she might otherwise have possessed. *Id.* at 937 & n.3.

After affirming the district court's finding of an enforceable oral contract, the Second Circuit rejected Roth's contention that the Copyright Act of 1978 applied retroactively. *Id.* at 938–39. The court then ventured into admitted dicta,[15]

---

[14] *See* 17 U.S.C. § 201(b) ("In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright."); 17 U.S.C. § 101 (defining "work made for hire" in part as "a work specially ordered or commissioned for use as a contribution to a collective work, . . . if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire").

[15] Dictum is "[a]n opinion expressed by a court, but which, not being necessarily involved in the case, lacks the force of an adjudication. . . ." *Seger v. Yorkshire Ins. Co.*, 503 S.W.3d 388, 399 (Tex. 2016) (quoting *Grigsby v. Reib*, 153 S.W. 1124, 1126 (Tex. 1913)). "Obiter dictum [literally, "something said in passing". *Obiter dictum*, BLACK'S LAW DICTIONARY (10th ed. 2014).] is not binding as precedent." *Seger*, 503 S.W.3d at 399. Judicial dictum is "a statement made deliberately after careful consideration and for future guidance in the conduct of

stating that "the language of the Act, its legislative history and rules of statutory interpretation are sufficient answers to Roth's [retroactivity] claim," but then noting "*en passant*,"[16] that

> adoption of her interpretation . . .. *would*, in addition, raise a serious issue concerning the Act's constitutionality. *See* 1 *Nimmer on Copyright, supra,* at § 1.11. An interest in a copyright is a property right protected by the due process and just compensation clauses of the Constitution. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3194, 73 L.Ed.2d (1982); *Pruneyard Shopping Center v. Robins*, 447 U.S. 74, 82 n.6, 100 S.Ct. 2035, 2041 n.6, 64 L.Ed.2d 741 (1980). The agreement between Roth and the appellees, pursuant to which Roth surrendered any rights she might otherwise have obtained in the copyright, was valid when it was entered into, and a subsequently enacted statute which purported to divest Pritikin and McGrady of their interest in the copyright by invalidating the 1977 agreement *could be viewed* as an unconstitutional taking. *See, e.g.*, *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922); *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1922); *see also* Michelman, *Property, Utility, And Fairness: Comments On The Ethical Foundations of "Just*

---

litigation," and "[i]t is at least persuasive and should be followed unless found to be erroneous." *Id.* (citations omitted).

[16] Literally, "in passing." *En passant*, WEBSTER'S NEW COLLEGIATE DICTIONARY (1981). In *Chavez II*, the Fifth Circuit pointed out *Roth*'s dicta, noting that "the Second Circuit was *speculating* on the entirely different issue of Congress's inability to retroactively invalidate by statute certain pre-existing copyright contracts between private parties." *Chavez II*, 157 F.3d at 288 (emphasis added). Also, we disagree with *Chavez II*'s likely inadvertent characterization of *Roth*'s copyright-takings statement as a *holding* because *Roth*'s statement is obiter dictum. *See Chavez II*, 157 F.3d at 288 ("one court of appeals has *held* that an interest in a copyright is protected by the Due Process and Just Compensation Clauses of the Constitution") (emphasis added) (citing *Roth*, 710 F.2d at 939).

> *Compensation" Law*, 80 HARV. L. REV. 1165 (1967). *Resolution of this issue is not required for our holding, and will have to wait for an appropriate case.*[17]

*Id.* at 939 (emphases added).

As support for its statement that copyright is a property right protected by the just compensation clause, *Roth* cited two Supreme Court cases, neither of which involved intellectual property and copyright in particular and therefore do not support *Roth*'s proposition. *See id.* (citing *Loretto* and *PruneYard*). *Loretto* held that a New York law requiring a landlord to permit a cable television company to install its cable facilities on his property—a permanent physical occupation—was a "taking." *Loretto*, 458 U.S. at 421, 441.

*PruneYard* upheld a state constitutional requirement that shopping center owners permit individuals to exercise free speech and petition rights on their property, rejecting the owner's contention that it amounted to an unconstitutional infringement of property rights under the Fifth Amendment's Takings Clause. *PruneYard*, 447 U.S. at 82–84. Because "one of the essential sticks in the bundle of property rights is the right to exclude others," the Court stated that there has literally been a "taking" of that right to the extent that the California Supreme Court has interpreted its state constitution to entitle its citizens to exercise free-

---

[17]    Neither *Pennsylvania Coal* nor *Penn Central* concern intellectual property and takings.

expression and petition rights on shopping center property. *Id.* at 82. *Roth* cited footnote six in *PruneYard*, which discusses "property" as used in the Takings Clause to denote "the group of rights inhering in the citizen's relation to the physical thing, as the right to possess, use and dispose of it. . . . The constitutional provision is addressed to every sort of interest the citizen may possess." *Id.* at 82 n.6 (quoting *United States v. Gen. Motors Corp.*, 323 U.S. 373, 377–78 (1945)).[18] This weighty quotation also appears in *Ruckelshaus*, with the Court ascribing it to intangible property rights, 467 U.S. at 1003, but it does not suffice to compel takings protection to copyright. *See, e.g.*, *PruneYard*, 447 U.S. at 82 ("not every destruction or injury to property by governmental action has been held to be a 'taking' in the constitutional sense") (quoting *Armstrong v. United States*, 364 U.S. 40, 48 (1960)).

### *Zoltek v. United States*

As mentioned, in *Zoltek*, the Federal Circuit[19] held that a patent holder could not allege patent infringement as a Fifth Amendment taking against the federal

---

[18]  Like *PruneYard*, *General Motors* did not involve intellectual property. It concerned the Government's temporary condemnation of a warehouse held under a long-term lease during World War II. *See Gen. Motors*, 323 U.S. at 375.

[19]  The Federal Circuit is a specialized appellate court that has exclusive nationwide jurisdiction of patent appeals and also takes appeals from the United States Court of Federal Claims. *See* 28 U.S.C. §§ 1292(c), 1295(a)(1), (3).

government under the Tucker Act.[20] *Zoltek*, 442 F.3d at 1350–53. The Federal Circuit relied on *Schillinger v. United States*, 155 U.S. 163 (1894), in which the Supreme Court rejected an argument that a patent holder could sue the government for patent infringement as a Fifth Amendment taking. *Zoltek*, 442 F.3d at 1350 (citing *Schillinger*, 155 U.S. at 169); *see id.* at 1351–52 (explaining that Congress enacted the Tucker Act in response to *Schillinger*).

*Zoltek*, a post-*Ruckelshaus* decision, stated unequivocally: "*Schillinger* remains the law." *Id.* at 1350. The court noted that in *Ruckelshaus* (discussed below), the Supreme Court concluded that government interference with interests "cognizable as trade-secret property right[s]" could constitute a taking depending on the circumstances, but that *Ruckelshaus* did not overrule *Schillinger* and that *Schillinger* must be followed until it is overruled by the Supreme Court. *Zoltek*, 442 F.3d at 1352 & n.3 (citing and quoting *Ruckelshaus*, 467 U.S. at 1003–04). The Federal Circuit vacated its original decision on other grounds years later, *see Zoltek Corp. v. United States*, 672 F.3d 1309, 1322, 1327 (Fed. Cir. 2012), but its

---

[20]    28 U.S.C. § 1491(a)(1) (providing limited waiver of sovereign immunity by the United States for certain claims in Court of Federal Claims), § 1498 (providing statutory remedy in Court of Federal Claims for federal government's unlicensed use of patent or copyright). "Generally, compensation for a taking may be obtained under the Tucker Act, which confers jurisdiction on the United States Court of Claims." *Gordon v. Norton*, 322 F.3d 1213, 1216 (10th Cir. 2003) (citing *Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1, 11–12 (1990)).

original decision remains persuasive and has been subsequently cited with approval and applied by the Federal Circuit. *See Gal-Or v. United States*, 470 F. App'x 879, 881–83, 2012 WL 882670, at \*1–3 (Fed. Cir. Feb. 9, 2012) (holding Court of Federal Claims correctly concluded that patent-infringement claim against federal government was not cognizable Fifth Amendment takings claim) (citing *Zoltek*, 442 F.3d at 1352–53); *see also* Bell, 58 SYRACUSE L. REV. at 538 (noting that Supreme Court's denial of certiorari in *Zoltek* "strongly suggests that the same outcome would obtain for copyrights").

*Zoltek* also provides a segue to Olive's reliance on *James v. Campbell*, 104 U.S. 356 (1881), which he contends is Supreme Court precedent for his copyright-takings claim because it purports to protect patents from a government taking without just compensation. Olive points out that *Horne*, the raisin-takings case, states:

> Nothing in this [Takings Clause] history suggests that personal property was any less protected against physical appropriation than real property. As this Court summed up in *James v. Campbell*, 104 U.S. 356, 358, 26 L.Ed. 786 (188[1]), a case concerning the alleged appropriation of a patent by the Government:
>
> > "[A patent] confers upon the patentee an exclusive property in the patented invention which cannot be appropriated or used by the government itself, without just compensation, any more than it can appropriate or use without compensation land which has been patented to a private purchaser."

*Horne*, 135 S.Ct. at 2427. Olive further notes that subsequent Supreme Court cases have repeated the point in *James*: *Hollister v. Benedict & Burnham Mfg. Co.*, 113 U.S. 59, 67 (1885); *Wm. Cramp & Sons Ship & Engine Bldg. Co. v. Int'l Curtis Marine Turbine Co.*, 246 U.S. 28, 39–40 (1918); and *Hartford-Empire Co. v. United States*, 323 U.S. 386, 415 (1945). But we agree with the University that the Supreme Court has never definitively held that a patent holder's recourse against the government for infringement is a *constitutional* takings claim.[21] *Zoltek* noted as much, for it addressed *James* in addition to applying *Schillinger* to conclude that a patent-infringement claim against the federal government is not a cognizable Fifth Amendment takings claim:

> [2]As the Supreme Court recognized at least as long ago as 1881, the patentee's recourse for infringement by the government is limited by

---

[21]    The University asserts that *Horne*'s quotation from *James* is dicta, as *Horne* involved raisins, not patents, and that *Horne* makes no pretense of deciding any intellectual-property issue. *See Horne*, 135 S.Ct. at 2427. The University argues persuasively that, had the Court in *Horne* fully considered the issue, it would have realized that *James*'s dicta must be discounted because it came from a time when the federal takings clause was not understood to be self-executing and therefore routinely conflated a takings analysis with an implied contract with the government to pay the value of the property. *See, e.g.*, *United States v. N. Am. Transp. & Trading Co.*, 253 U.S. 330, 335 (1920) ("The right to bring this suit against the United States in the Court of Claims is not founded upon the Fifth Amendment, but upon the existence of an implied contract entered into by the United States; and the contract which is implied is to pay the value of property as of the date of the taking.") (citations omitted)); *see also James*, 104 U.S. at 358–59 (noting that Court of Claims had been entertaining jurisdiction of claims for unauthorized use of patented inventions "upon the footing of an implied contract").

24

the scope of the waiver of sovereign immunity established by the Congressional consent to be sued. "If the jurisdiction of the Court of Claims should not be finally sustained [to hear an infringement action against the government], the only remedy against the United States, unless Congress enlarges the jurisdiction of that court, would be to apply to Congress itself." *James v. Campbell*, 104 U.S. 356, 359, 26 L.Ed. 786 (1881).

. . . .

In response to *Schillinger,* Congress provided a specific sovereign immunity waiver for a patentee to recover for infringement by the government. Had Congress intended to clarify the dimensions of the patent rights as property interests under the Fifth Amendment, there would have been no need for the new and limited sovereign immunity waiver. The manner in which Congress responded to *Schillinger* is significant.

. . . .

In sum, the trial court erred in finding that Zoltek could allege patent infringement as a Fifth Amendment taking under the Tucker Act, and we reverse.

*Zoltek*, 442 F.3d at 1349 & n.2, 1352–53; *see id.* at 1349–50 ("A patentee's judicial recourse against the federal government, or its contractors, for patent infringement, is set forth and limited by the terms of 28 U.S.C. § 1498.").

The University correctly asserts that the above quote from *James* is dicta—at least as to the existence of a viable Fifth Amendment takings claim—and that the subsequent cases introduced new dicta by parroting *James*'s dicta. *James*'s dicta about patents as property under the federal takings clause is divorced from its holding that the government was not liable for infringement because there was no

25

valid patent. *See James,* 104 U.S. at 383. *Hollister* cited this dicta from *James* in an opinion that also found no valid patent and that specifically declined to dispose of the case on takings grounds.[22] *Hollister*, 113 U.S. at 67, 71–73. In *Zoltek*, the Federal Circuit noted that the Supreme Court in *Wm. Cramp* acknowleged that the Tucker Act was the sole remedy for the government's patent infringement. *Zoltek*, 442 F.3d at 1351 (stating that the 1910 [Tucker] Act "was intended alone to provide for the discrepancy resulting from the right in one case to sue on the implied contract and the non-existence of a right to sue" for infringement) (quoting *Wm. Cramp*, 246 U.S. at 41). *Zoltek* further noted that in *Wm. Cramp* and *Crozier v. Fried. Krupp Aktiengesellschaft*, 224 U.S. 290, 304 (1912), the Supreme Court "acknowledged Congressional recognition that the Court of Claims lacked Tucker Act jurisdiction over infringement under a takings theory." *Zoltek*, 442 F.3d at 1351 ("Moreover, discussing the state of the law before the 1910 [Tucker] Act, the *Crozier* court expressly noted that no patent infringement action could be brought

---

[22] *Hartford-Empire* likewise quoted *James* in dicta because it did not concern the Fifth Amendment and held only that Congress had chosen not to make forfeitable patents that were involved in an antitrust violation. *Hartford-Empire*, 323 U.S. at 413–16. Olive also contends that the Supreme Court has held that trademark is protected by the federal takings clause, but that contention not only also relies on dicta but is incorrect. *See K Mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 185–86 (1988) (stating that trademarks provide trademark owner with certain bundle of rights in context of decision not involving Fifth or Fourteenth Amendments); *Coll. Savs. Bank*, 527 U.S. at 673 (quoting *Cartier* dicta to note that trademark may constitute property for purposes of due-process clause).

26

against the government unless in the Court of Claims under a contract or implied contract theory.") (citing *Crozier*, 224 U.S. at 304).

In conclusion, and as partially explained by the Federal Circuit in *Zoltek*, the litany of Supreme Court decisions relied on by Olive did not recognize a *constitutional* takings claim for patent infringement. *See Zoltek*, 442 F.3d at 1350–53 & nn.2-3.

### *Ruckelshaus v. Monsanto Co.*

*Ruckelshaus*, which held that trade secrets[23] are property under applicable state law and can be subject to the federal takings clause, is the only Supreme Court decision that has afforded takings protection to a form of intellectual property. *See Ruckelshaus*, 467 U.S. at 1002. At issue were EPA regulations requiring applicants for pesticide registration to disclose the applicant's health, safety, and environmental data that were trade-secret property rights under state law, with the disclosure potentially becoming available to the applicant's competitors. *Id.* at 992–98, 1001. The principal basis for this decision was the

---

[23] A trade secret is defined as "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Ruckelshaus*, 467 U.S. at 1001 (quoting RESTATEMENT (FIRST) OF TORTS § 757 cmt. b (AM. LAW INST. 1939)).

economic impact on the trade-secret owner and the impact's effect on the owner's

investment-backed expectations. *See id.* at 1005, 1011–12.

> Because of the intangible nature of a trade secret, the extent of the property right therein is defined by the extent to which the owner of the secret protects his interest from disclosure to others.
>
> . . . .
>
> With respect to a trade secret, the right to exclude others is central to the very definition of the property interest. Once the data that constitute a trade secret are disclosed to others, or others are allowed to use those data, the holder of the trade secret has lost his property interest in the data.[15]
>
> [15] We emphasize that the value of a trade secret lies in the competitive advantage it gives its owner over competitors. Thus, it is the fact that operation of the data-consideration or data-disclosure provisions will allow a competitor to register more easily its product or to use the disclosed data to improve its own technology that may constitute a taking.
>
> . . . .
>
> The economic value of that property right lies in the competitive advantage over others that Monsanto enjoys by virtue of its exclusive access to the data, and disclosure or use by others of the data would destroy that competitive edge.

*Id.* at 1002, 1011–12 & n.15.

*    *    *

It is not in dispute that a copyright is property with value to its owner. As we

stated, federal law protects this property interest by providing a statutory

infringement cause of action and the recovery of substantial damages. *See* 17

U.S.C. §§ 501(a), 504.

> Copyright protection "subsists . . . in original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). This protection has never accorded the copyright owner complete control over all possible uses of his work. Rather, the Copyright Act grants the copyright holder "exclusive" rights to use and to authorize the use of his work in five qualified ways, including reproduction of the copyrighted work in copies. *Id.*, § 106. All reproductions of the work, however, are not within the exclusive domain of the copyright owner; some are in the public domain. Any individual may reproduce a copyrighted work for a "fair use;" the copyright owner does not possess the exclusive right to such a use. Compare *id.*, § 106 with *id.*, § 107.[24]

> "Anyone who violates any of the exclusive rights of the copyright owner," that is, anyone who trespasses into his exclusive domain by using or authorizing the use of the copyrighted work in one of the five ways set forth in the statute, "is an infringer of the copyright." *Id.*, § 501(a).

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 432–33 (1984).

(footnotes omitted).

---

[24]     Under current law, the Copyright Act defines fair use as follows:

> the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright.

17 U.S.C. § 107.

Olive does not allege that the University took his copyright interest; the only reasonable construction of Olive's claim is that the University committed infringement. *See id.* Because copyright is nonrivalrous,[25] Olive never lost his right to use or license his photograph; the University's infringement cost Olive a licensing fee. *See* Cotter, 50 FLA. L. REV. at 562–63; *see also* Note, 128 HARV. L. REV. at 985 n.109 ("As Professor Thomas Cotter has insightfully pointed out, the consequences of government use are very different for intellectual property because of its nonrivalrous nature: although the government's use of physical property excludes the owner, government copyright infringement costs the owner no more than a licensing fee.") (citing Cotter, 50 FLA. L. REV. at 562–63.). In these respects, copyright is distinguishable from a trade secret, which, if disclosed to others, results in a loss of the property interest and the economic value of the competitive advantage inherent in the trade secret. *See Ruckelshaus*, 467 U.S. at 1010.

Copyright infringement as alleged by Olive is "akin to a transitory common law trespass—a government interference with real property that may not amount to

---

[25] See n.1 *supra*.

a taking at all."[26] Note, 128 HARV. L. REV. at 985 n.109; *see id.* at 977 n.41 ("[N]ot every physical invasion amounts to a taking: a merely transitory invasion, akin to a common law trespass, may not amount to a taking at all.") (citing *Hendler v. United States*, 952 F.2d 1364, 1377 (Fed. Cir. 1991)); *see Sony*, 464 U.S. at 433 ("anyone who trespasses into his exclusive domain by using or authorizing the use of the copyrighted work in one of the five ways set forth in the statute, " 'is an infringer of the copyright' "); *see also Dowling v. United States*, 473 U.S. 207, 217 (1985) ("The infringer invades a statutorily defined province guaranteed to the copyright holder alone. But he does not assume physical control over the copyright; nor does he wholly deprive its owner of its use.").

> Suppose, for example, that ten copies of a government manual take from a textbook an excerpt that is just too long to be a fair use. The act is an infringement but seems hardly more serious than a "truckdriver parking on someone's vacant land to eat lunch." *Hendler v. United States*, 952 F.2d 1364, 1377 (Fed. Cir. 1991).

> Even if the government sets itself up as a competitor by producing a copyrighted work, there probably is not good reason to conclude

---

[26] Similarly, property rights, including copyright, have been described as ownership of a bundle of rights or interests. *See Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 546 (1985) ("Section 106 of the Copyright Act confers a bundle of exclusive rights to the owner of the copyright."); *see also Ruckelshaus*, 467 U.S. at 1011; Note, 128 HARV. L. REV. at 980; Chapdelaine, 10 BUFF. INTELL. PROP. L.J. at 51–61. "But the denial of one traditional property right does not always amount to a taking. At least where an owner possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking, because the aggregate must be viewed in its entirety." *Andrus v. Allard*, 444 U.S. 51, 65–66 (1979).

automatically that the copyright has been "taken." The copyright holder can still exclude all private competitors even as the government pirates the entirety of his work.

Note, 128 HARV. L. REV. at 985 n.109 (citing Cotter, 50 FLA. L. REV. at 562–63.); *cf.* Vazquez, 106 Yale L.J. at 1745 n.281 ("the Court's takings cases would appear to require the conclusion that a state's infringement of a patent is not a 'taking,' as it does not 'virtually destroy' the property's value") (citing LAURENCE H. TRIBE, AMERICAN CONSTITUTIONAL LAW § 9-3, at 593 (2d ed. 1988)).

To summarize, legal scholars are divided on whether copyright should be protected from government takings, and legal authority is scant. This court's unpublished opinion in *Schneider* held that trademark infringement is not a taking. *Schneider*, 1998 WL 834346, at *2. In the unique *Porter* case, the Fifth Circuit stated that infringement of a common law copyright was not a taking. *Porter*, 473 F.2d at 1337. In *Ruckelshaus*, the Supreme Court held that trade secrets can be subject to the federal takings clause. *Ruckelshaus*, 467 U.S. at 1002. But in the Federal Circuit's vacated, post-*Ruckelshaus Zoltek* decision on which the Supreme Court denied certiorari, it held that patent infringement by the federal government does not constitute a taking. *Zoltek*, 442 F.3d at 1350–53. Patents and trademarks, as species of intellectual property, are more similar to copyrights than trade secrets.

Based on this authority, we hold that the Olive's takings claim, which is based on a single act of copyright infringement by the University, is not viable. We

sustain in part the University's first and second issues, and we conclude that the trial court erred in denying the University's plea to the jurisdiction. This opinion should not be construed as an endorsement of the University's alleged copyright infringement,[27] and as discussed, copyright owners can seek injunctive relief against a state actor for ongoing and prospective infringement. Instead, in the absence of authority that copyright infringement by a state actor presents a viable takings claim, and based on the contrary persuasive authority cited above, we decline to so hold.

## Conclusion

Because Olive has not pleaded a viable takings claim, the trial court should have granted the University's plea to the jurisdiction and dismissed Olive's takings claims for lack of subject-matter jurisdiction. We vacate the trial court's order

---

[27] *See Harris Cty. Flood Control Dist. v. Kerr*, 499 S.W.3d 793, 804–05 (Tex. 2016) (noting that where government action harms an individual, "[o]ne's normal reaction is that he should be compensated therefor. [But,] [o]n the other hand, the doctrine of the non-suability of the state is grounded upon sound public policy. If the State were suable and liable for every tortious act of its agents, servants, and employees committed in the performance of their official duties, there would result a serious impairment of the public service and the necessary administrative functions of government would be hampered.") (quoting *Tex. Highway Dep't v. Weber*, 219 S.W.2d 70, 71–72 (Tex. 1949)); *see also Hillman v. Nueces Cty.*, ___ S.W.3d ___, ___, 2019 WL 1231341, at *6 (Tex. Mar. 15, 2019) (quoting truism that, "just as immunity is inherent to sovereignty, unfairness is inherent to immunity.") (quoting *City of Galveston v. State*, 217 S.W.3d 466, 480 n.38 (Tex. 2007) (Willett, J., dissenting)).

denying the University's plea to the jurisdiction and dismiss this cause for lack of subject-matter jurisdiction.


                                           Richard Hightower
                                           Justice

Panel consists of Chief Justice Radack and Justices Higley and Hightower.